In re MARRIAGE OF MARK HOCHLEUTNER, Petitioner-Appellant, and MARCIA HOCHLEUTNER, Respondent-Appellee.

Second District    No. 2—92—1443

Opinion filed April 26, 1994.

Robert A. Chapski, Randy K. Johnson, and Michael C. Doyen, all of Law Office of Robert A. Chapski, Ltd., of Elgin, for appellant.

William H. Weir, of Brittain & Ketcham, P.C., of Elgin, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Petitioner, Mark Hochleutner, appeals from a judgment of dissolution of marriage in which the court ordered him to pay maintenance to respondent, Marcia Hochleutner. We affirm the judgment of the circuit court.

Petitioner filed his petition for dissolution of marriage from respondent on October 28, 1991. The parties were married in October 1972, and their son Matthew was born on May 21, 1973. In the prayer for relief, petitioner requested that the marriage be dissolved and that respondent be barred from any maintenance. Petitioner also requested a distribution of the property of the parties and "such other and further or different relief the Court may deem just."

Following an evidentiary hearing on September 22, 1992, in which both parties testified regarding their circumstances, the court entered a final, written judgment of dissolution dated November 12, 1992, in which, among other things, the court made provisions for the distribution of property, the payment of debts, and college tuition for the parties' son. The court also barred petitioner from receiving maintenance and ordered petitioner to pay to respondent maintenance in the amount of $600 per month, an award reviewable in 24 months. No objection was made to the award of maintenance at the hearing or at the time the judgment was entered, and no post-judgment motion was filed challenging the order of the court.

Petitioner appeals directly to this court, arguing that the court committed reversible error by exceeding its authority when it made an award of maintenance *sua sponte* because there were no pleadings

to raise the issue where the respondent made no request for maintenance, and there was no evidence presented to support the award.

At the hearing, petitioner testified that the only child of the marriage was Matthew, who was 19 years old and attended Elgin Community College. Petitioner's health was good, and he was employed at the Department of Transportation where his current salary was $32,800. He had been employed by the State since 1971. He and respondent were covered by medical insurance available from his employer and paid approximately $50 per month in premiums. Matthew was not covered by the policy. Each party had life insurance policies with a cash value of approximately $4,000, but petitioner had cashed one policy worth $3,000.

Petitioner was living in the marital home, which was purchased in November 1988. It was valued between $92,000 and $94,000, and there was a $60,000 mortgage on the home. Respondent left the marital home and took with her some personal items, some china and a vacuum cleaner, among other things; about half of the personal property still remained in the home. Petitioner had only a day-to-day checking account to pay bills and had no other bank accounts. Petitioner's pension would be $650 per month if he retired at age 65. Petitioner testified that he had been making payments on the residence. He testified regarding the income and expense affidavit which he prepared (exhibit No. 1).

Respondent worked outside the home during the marriage, but did not make contributions toward the mortgage and utilities since she moved from the home. The parties owed $2,988 to the First Chicago Bank; petitioner made the payments on this debt. The debt included tuition for Matthew in the amount of $632. Also included in the First Chicago Bank debt was a Visa debt of respondent's in the amount of $1,069 and a Larkin Bank loan of $702 for a joint vacation, a truck payment, and a dentist's bill of $585. In addition to the First Chicago Bank loan, there was a Visa debt of $3,024. This debt included petitioner's dentist's bills totaling $1,519 and a balance due on June 27, 1991, of $1,505 for other items.

Petitioner stated that the Visa debt was a joint obligation. There was also a debt of $1,200 for respondent's medical care. Petitioner testified that two years earlier the parties signed a time-share resort contract for vacation purposes on which they owed $3,500. Petitioner had a 1986 Isuzu pickup truck, and respondent drove a 1985 Ford Escort; the vehicles had approximately the same value. There was no debt remaining on the Ford. The parties also owned a 14-foot aluminum boat that petitioner valued at approximately $600 to $700.

On cross-examination, petitioner testified that he earned overtime

in addition to his salary. In 1989, his income including overtime amounted to $35,370, and, in 1990, it was $34,151. Petitioner further testified that his income for 1991 was $39,922.

At this stage of the hearing, the trial court observed that, although there was an appearance by respondent through counsel, there was no answer or counterpetition filed in the matter. The court inquired, "You aren't requesting any particular kind of relief in this case?" Respondent's counsel, William Weir, replied, "I believe that there was an answer filed. I don't see it in my pleading section, Judge. That's all I can tell you." Mr. Chapski, petitioner's counsel, responded that he did not have a copy of an answer.

Petitioner testified that he paid approximately $1,200 or $1,300 toward his son's college tuition, but made no other contributions since the son moved out in April. Petitioner estimated that his overtime would amount to $500 or $600 for the current year, and his salary would be between $34,000 and $35,000.

Respondent testified that, while she did not necessarily agree with petitioner's testimony, she did not wish to contest the basis for the dissolution. She agreed that the relationship was irretrievably lost and further attempts at reconciliation would be fruitless. Respondent stated that, after an incident in April, she moved to a friend's home, and her son also moved in with a friend. Matthew paid $250 per month for rent and food expenses and $200 to $250 per semester for textbooks. Respondent paid $100 per month for rent and $25 for groceries. She paid her own telephone bill. She did not pay for other utilities.

Respondent was employed 18 hours per week as a testing clerk at Elgin Community College and earned $7.75 per hour. She had no other employment, but was enrolled full-time at Northern Illinois University, where she carried 19 semester hours. She expected to graduate in May 1993 with a bachelor's degree in communication studies. Her health was generally good, but she took medication for hives and for sleeping problems. This semester, she purchased student medical insurance because she was uncertain how long petitioner would cover her with his policy. Her policy terminates when her studies end. Respondent testified regarding personal property she took when she left the residence. Remaining in the marital residence were a bedroom set, living room furniture, a desk, a dining room set, a china cabinet, some kitchenware, a television, a VCR, and a microwave. She incurred attorney fees which she could not pay on her income.

On cross-examination, respondent testified that she, petitioner, and their son owned equal amounts in 12 shares of AT&T stock. She

previously had a savings account containing $1,000 which was depleted for her college expenses. Her pension account contained $3,000.

The court heard the arguments of counsel. At one point, petitioner's counsel argued that maintenance should be denied to both parties because each was earning sufficient income to pay for his or her needs. Later, respondent's counsel argued that, with respect to the marital residence, he agreed there should be an equitable division between the parties, but urged the court to award 60% of the net equity in the home to respondent because of the gross disparity in the incomes and earning capacities of the parties.

The court noted that it was operating under some difficulty because there was no responsive pleading. The court relied on the prayer for relief in the petition to arrive at a decision in the matter and specially noted that petitioner sought to bar maintenance for respondent. Based on the evidence adduced and considering the length of the marriage and the style in which respondent was living as a student compared to that which she enjoyed during the marriage, the court denied petitioner's request to bar maintenance. The court instead awarded $600 per month to respondent, an award reviewable in 24 months, and recited the other terms of the judgment to be entered later.

A judgment of dissolution was originally entered on November 9, 1992. On the motion of respondent, that judgment was vacated and a corrected judgment was entered on November 12, 1992. The final judgment incorporated the award of maintenance to respondent, as well as the following pertinent provisions: the marital residence was to be sold, and, after paying obligations on the property, the net proceeds were to be divided equally between the two parties; petitioner retained the pickup truck and respondent the Ford Escort; furniture and other personal property would be divided by agreement of the parties or be sold by auction and the proceeds divided equally; each party retained his or her own shares of stock, life insurance policies, and individual bank accounts; each party retained 50% of the pension plans in existence, and a qualified domestic relations order would be entered; petitioner was barred from receiving maintenance, and respondent would receive the previously described maintenance subject to certain disqualifying events; the parties were to pay their respective debts; petitioner would pay his dental bills and the truck payments; respondent would pay her medical expenses; and the parties would be jointly liable for the $1,500 indebtedness incurred on the Visa credit card, this indebtedness to be paid from the proceeds of the sale of the residence. The court also ordered each

party to pay one-third of all of the son's tuition, with petitioner receiving credit for tuition already paid. The parties were to share equally in the profits or deficiencies for the sale of their time-share agreement.

Petitioner first argues that, because respondent never filed an answer or otherwise requested a maintenance award, the issue of maintenance was never raised, and he was never placed on notice so as to challenge such an award; therefore, he asserts that the court exceeded its authority in granting it. In support of his argument, petitioner cites *Klaisner v. Klaisner* (1975), 28 Ill. App. 3d 110. Additionally, he argues that there is no evidence in the record supporting such an award. Petitioner concedes, however, that it has long been recognized in Illinois law that a judgment of the court can be upheld if the relief was *generally* prayed for and was supported by the evidence. See *Doyle v. Doyle* (1915), 268 Ill. 96.

Petitioner concludes that the issue of maintenance was not in issue, respondent was in a default status for the failure to answer, and the court could not grant relief beyond that prayed for in the petition.

While we have found no recent case with similar facts, we resolve this appeal on the basis of well-established principles. An objection that an issue was not formally raised by the pleadings may be waived by the conduct of the parties or by the introduction of evidence on the issue at trial. (*La Grange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 714; *Buzan v. Buzan* (1977), 45 Ill. App. 3d 181, 183.) "Where a party proceeds with the case as though his adversary's pleadings joining issue were on file, he waives the adversary's failure to plead." (*Nerini v. Nerini* (1986), 140 Ill. App. 3d 848, 851; see *Slezak v. Fleming* (1946), 392 Ill. 387 (where parties proceed voluntarily without objection to offer evidence without answer being filed to complaint and without demanding answers, any objection to condition of the record is waived); *In re Marriage of Peoples* (1981), 96 Ill. App. 3d 94, 97 (petitioner waives right to object to failure of respondent to answer by proceeding to trial without voicing objection in trial court).) A nonjurisdictional question which has not been properly preserved for review ordinarily will not be considered on appeal. See *In re Marriage of DiAngelo* (1987), 159 Ill. App. 3d 293 (where court had statutory jurisdiction to award equitable maintenance pending appeal and no request for such maintenance was made, failure of opposing party to object resulted in waiver of issue on appeal).

■ The failure of respondent to plead did not divest the trial court of its statutory jurisdiction to award maintenance where the

issue was raised in the petition for dissolution, the parties were properly before the court, and an evidentiary hearing was conducted on the matter. The court was authorized to award maintenance pursuant to section 504(a) of the Illinois Marriage and Dissolution of Marriage Act, which states in pertinent part:

> "(a) In a proceeding for dissolution of marriage *** the court may grant a temporary or permanent maintenance award for either spouse in amounts and for periods of time as the court deems just, without regard to marital misconduct ***." 750 ILCS 5/504(a) (West 1992).

Section 504(a) further provides that maintenance may be paid from the income or property of the other spouse after consideration of all the relevant factors including, among others, such things as the income and property of each party; the needs of each party; the present and future earning capacity of each party; any impairment of a party having foregone or delayed education due to the marriage; the time necessary to enable the party seeking maintenance to acquire appropriate education, training and employment; the standard of living established during the marriage; the duration of the marriage; the age, physical and emotional condition of both parties; and any other factor that the court expressly finds to be just and equitable. 750 ILCS 5/504(a) (West 1992).

■ The court did not exceed its authority in awarding maintenance. There is no valid claim raised here for voidness or want of jurisdiction. Petitioner first raised the issue of maintenance in his prayer for relief by asking that the court bar respondent from receiving it. Petitioner should not now be heard to complain of the kind of surprise alleged in *Klaisner*, a case upon which petitioner relies. In *Klaisner*, the court was held to have exceeded its authority in ordering a conveyance of the respondent's interest in the marital home when the relief was first requested at a default hearing without notice to the respondent. There, neither the body of the complaint nor the petitioner's prayer for relief mentioned the property so as to place the respondent on notice that her property interest was involved. (*Klaisner*, 28 Ill. App. 3d at 113-14.) *Klaisner* is thus distinguishable.

In the present case, in addition to raising the issue of maintenance generally, petitioner also prayed for "such other and further or different relief the Court may deem just." The parties presented evidence touching directly on their respective incomes and financial resources, their living arrangements, the need for medical insurance coverage, the length of the marriage, the standard of living during the marriage, and respondent's need to complete her education to

become self-supporting. Although petitioner argued that each party had sufficient financial resources to take care of his or her needs so that maintenance should be barred, the disparity in the parties' incomes and standard of living was manifest. No more specific pleading was required under the circumstances.

In a marriage dissolution proceeding, where the statute authorizes an award of maintenance under just or equitable terms, all that is required to sustain the award is that the recipient be entitled to it and the award be equitable. (See *Palacio v. Palacio* (1975), 33 Ill. App. 3d 1074; see also *Bernardini v. Bernardini* (1970), 130 Ill. App. 2d 692.) Whether the recipient spouse is entitled to maintenance depends on that spouse's needs and the other spouse's ability to pay. *Palacio*, 33 Ill. App. 3d at 1078.

Petitioner concedes that the judgment of a court can be upheld if the relief was generally prayed for and was supported by the evidence. (See *Doyle*, 268 Ill. at 102; see also *Smothers v. Smothers* (1962), 25 Ill. 2d 86.) That principle applies here. In the absence of an objection by petitioner that respondent failed to plead for an award of maintenance, that issue must now be deemed waived. The issue of maintenance was raised generally in the petition. In the absence of formal pleading by respondent, the issues of maintenance and property distribution were then framed by the evidence adduced at trial. Petitioner's argument that the award is unsupported by the evidence is clearly untenable as our detailed recitation of the facts has shown. We note too that petitioner does not now claim that the award was unjust when considering the circumstances of each of the parties. The propriety, amount, and duration of a maintenance award are matters within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. (*In re Marriage of Eidson* (1992), 235 Ill. App. 3d 907, 911.) We find no such abuse here.

We conclude that petitioner's belated objection to the state of the pleadings results in a waiver of any defect therein. The trial court had jurisdiction of the parties and the subject matter. The petition raised the issue of maintenance generally, and the award was supported by the evidence.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and PECCARELLI, JJ., concur.