11 July 2000

No. 2--99--0807

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT 

_________________________________________________________________

In re
 MARRIAGE OF ) Appeal from the Circuit

MARY LYNNE CANTRELL, ) Court of Winnebago County.

)

) 

Petitioner-Appellee, )

)

and ) No. 91--D--999

)

RONALD G. CANTRELL, )

) Honorable

) Patrick L. Heaslip,

Respondent-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE HUTCHINSON delivered the opinion of the court:

This case comes to us following the trial court's judgment rendered upon respondent Ronald G. Cantrell's petition to terminate or modify maintenance paid to petitioner, Mary Lynne Cantrell.  The trial court awarded permanent maintenance to petitioner and also ordered respondent to pay petitioner's attorney fees.  We conclude that the trial court lacked the authority to change the form of maintenance from that of rehabilitative to that of permanent maintenance, resulting in an abuse of the trial court's discretion.  Consequently, we vacate in part, reverse in part, affirm in part, and remand the cause with directions.

Petitioner and respondent were married on June 22, 1966.  Two children were born of the marriage, both now emancipated.  Petitioner filed her petition for dissolution of marriage in August 1991.
  At a hearing conducted in February 1992, the trial court found that grounds for the parties' dissolution had been established.  On July 8, 1992, the trial court filed its judgment of dissolution of marriage, which found, 
inter alia
, that petitioner had been a housewife who had devoted herself to rearing their children; she obtained a two-year associate's degree, but not a four-year bachelor's degree; a large disparity existed in the earning abilities of the parties in favor of respondent; and the parties accumulated considerable assets that would be equitably divided.  The trial court ordered:

"[Respondent] shall pay to [petitioner] the sum of $300.00 per week as and for maintenance.  ***  [M]aintenance will be reviewed at the nearest reasonable date four (4) years from June 29, 1992.  At the maintenance review, the court will further address the need for a Master's Degree by [petitioner].  Maintenance may be modifiable prior to the review date per statute.  All maintenance payments will be made directly to [petitioner] for good cause shown.

***

[Respondent] shall pay before due [petitioner's] college expenses through a Bachelor's Degree.  Such expenses include tuition, books, fees and transportation expenses."

On December 29, 1992, the trial court modified respondent's maintenance obligation to $3,000 per month to petitioner.  Petitioner received an equitable distribution of marital property worth approximately $411,718, or roughly 60% of the total estate; respondent received approximately $234,450.  On March 1, 1994, respondent petitioned the trial court to terminate his maintenance obligation because he became unemployed.  On June 7, 1994, the trial court entered an order abating respondent's obligation to pay maintenance; however, respondent was still required to pay for petitioner's college education expenses.  The trial court also ruled that petitioner did not have an affirmative obligation to seek full-time or part-time employment because of her college enrollment.

On July 13, 1995, the trial court reinstated respondent's $3,000 maintenance obligation retroactive to June 1, 1995.  The trial court issued a maintenance review decision on August 21, 1996, wherein the trial court found that petitioner was diligent in securing her college degree, "so that she has the training or skills to become self-sufficient."  The trial court further found that petitioner was making a good-faith effort to establish herself in her field of work, which involves a time period for her to market her job skills.  The trial court also noted its agreement with respondent that petitioner should make every effort to sustain self-sufficiency and full employment at the earliest possible time.  Thereafter, on September 5, 1996, the trial court ordered respondent to continue paying maintenance as previously ordered and scheduled a further review of maintenance two years from August 1996.

On June 16, 1998, respondent filed a petition to terminate or review maintenance.  The trial court conducted a hearing on May 21, 1999.  In his opening statement, counsel for petitioner noted that the parties stipulated that the issues did not relate to respondent's ability to pay maintenance but rather the questions of review and termination of maintenance.

Respondent testified that his year-to-date earnings ending April 18, 1999, were $123,548 and that he also received a bonus in approximately the same amount.  Respondent reported $219,296 in wages for 1996; $252,721 for 1997; and $306,266 for 1998.

Petitioner testified that she received a bachelor of fine arts degree with honors from Northern Illinois University in 1995.  Since obtaining her degree, she started her own business, particularly focusing on photography.  Petitioner also illustrates, paints, and does computer work.  Petitioner gave detailed testimony regarding her portfolio and discussed the exhibits presented to the trial court.

Petitioner testified that in 1996 she reported gross business income of approximately $3,000 and business expenses of $6,000, resulting in a business loss of approximately $3,000.  In 1997 she reported gross business income of approximately $6,350 and business expenses of $7,600, resulting in a business loss of approximately $1,250.  In 1998 petitioner reported gross business income of approximately $10,500 and business expenses of $11,000, resulting in a business loss of approximately $500.  At the time of the hearing, petitioner's 1999 accounts receivable totaled approximately $4,125.

On cross-examination, petitioner testified that, in the four years since she graduated, she had applied for 8 to 12 full-time positions but received no offers of employment.  She admitted that, in 1992, she testified that she intended to go to college, get a degree, obtain employment, and achieve self-sufficiency.  Petitioner further testified that she did not know when she would become self-sufficient.

Petitioner's counsel testified regarding legal fees he has recently incurred by representing petitioner.  His fees totaled approximately $4,500, of which petitioner had paid $3,000.

Respondent testified that he has a heart condition that will require surgery within a few years.  Respondent further testified that he runs a division of a manufacturing company.  His job is to improve the operation such that the company would no longer be in danger of going out of business.  He was terminated from a company in 1993 and remained unemployed for approximately 18 months.  Respondent anticipated that his income in 1999 would total approximately $276,000, which includes a base salary of $210,000, a bonus of $60,000, and an automobile allowance.

Following closing arguments, the trial court issued its ruling.  The trial court stated:

"First of all, whether or not [petitioner] has exercised good faith efforts in attempts to rehabilitate herself and become self-sufficient.  In answer to that question, I would say yes, I believe she has.

***

This is the woman that he married.  She was artistic in nature when he married her.  She will always be artistic in nature.  She will never be the industrialist that [respondent] is, and I can't change that.  And ordering her to go out and go to school and asking her to jump through hoops and do all sorts of things won't change that.

The bottom line is this.  This is a long-term marriage.  They have a couple of children together who are now emancipated.

[Respondent] *** successfully climbed the corporate ladder.  ***  This year he is anticipated to make $270,000.

I guess we could order [petitioner] to go out and flip hamburgers ***.  She could make probably 5, 6 bucks an hour, but I don't think the law requires her to do that.

***

*** I believe that [petitioner] has put forth a good faith effort.  She is not self-sufficient.  [Respondent] has the ability to continue paying the maintenance.  [Petitioner] has the need for it.

I don't find there has been any change in circumstances except for [petitioner] having achieved her degree, but financially that hasn't changed her position.  On the other hand, [respondent's] income has gone up substantially.

Counsel, you indicate this isn't permanent maintenance.  I submit to you that it is permanent, maintenance.  If it doesn't have a term certain to end, then it's permanent maintenance.  I am going to consider this a permanent maintenance order.

Maintenance will continue at $3,000 per month.  It will be subject to statutory terms for modification and termination."

The trial court then ordered respondent to pay $4,500 for reasonable attorney fees incurred by petitioner.  Respondent timely appeals, contending that the trial court erred when it awarded permanent maintenance.  Respondent also contends that maintenance should have been modified or terminated and that the trial court should have ordered petitioner to make an effort to provide for her own needs.  Last, respondent contends that the trial court erred when it ordered him to pay petitioner's attorney fees.

Under the Illinois Marriage and Dissolution of Marriage Act (the Act)(750 ILCS 5/101 
et seq.
 (West 1998)), an award of spousal support is known as maintenance.  See 750 ILCS 5/504 (West 1998).  The policy underlying rehabilitative maintenance is to sever the financial ties between a former married couple in an expeditious, but just, manner and make each spouse independent of the other as soon as practicable.  
In re Marriage of Carpenter
, 286 Ill. App. 3d 969, 973 (1997).  In the present case, the record clearly reflects that, at the May 1999 hearing, neither party requested that petitioner be awarded permanent maintenance.  The hearing was conducted pursuant to respondent's June 1998 petition to terminate maintenance.  In his opening statement, counsel for petitioner stated that the issue to be decided concerned the review and termination of respondent's maintenance obligation.  The only mention of permanent maintenance was when counsel for respondent reminded the trial court that the original award of maintenance was that of a rehabilitative and reviewable nature.

We note that a trial court's jurisdiction is plenary, but not boundless.  See 
Ligon v. Williams
, 264 Ill. App. 3d 701, 707 (1994).  With limited exceptions, circuit courts have "original jurisdiction of all justiciable matters."  Ill. Const. 1970, art. VI, §9.  The trial court's authority to exercise its jurisdiction and resolve a justiciable question is invoked through the filing of a complaint or petition.  735 ILCS 5/2--201 (West 1998); 
Ligon
, 264 Ill. App. 3d at 707.  These pleadings serve to frame the issues for the trial court to adjudicate and to circumscribe the relief the trial court is empowered to order; a party cannot be granted relief in the absence of a corresponding pleading.  
Ligon
, 264 Ill. App. 3d at 707.  Upon our review of the record, we believe that the record lacks circumstances in which the trial court 
sua sponte
 should have created an award for permanent maintenance to petitioner.  Accordingly, we hold that the trial court abused its discretion when it established an award for permanent maintenance 
and vacate that portion of the order creating it.

Respondent next contends that maintenance should have been modified or terminated and that the trial court should have ordered petitioner to make an effort to provide for her own needs.  The trial court initially awarded maintenance to petitioner for four years, reviewable at the end of four years.  In August 1996 the trial court reviewed the issue of maintenance and again ordered respondent to pay maintenance, reviewable at the end of two years.  At that time the trial court noted that petitioner was diligent in securing her college degree in an effort to become self-sufficient.  The trial court further found that petitioner was making a good-

faith effort to establish herself in her field of work and understood that marketing her job skills would take time.  The trial court also noted that petitioner should make every effort to attain self-sufficiency and full employment at the earliest possible time.

The decision whether to modify or terminate maintenance is within the sound discretion of the trial court, and we will not disturb the trial court's decision absent an abuse of that discretion.  
In re Marriage of Bothe
, 309 Ill. App. 3d 352, 355 (1999).  We hold, based upon our review of the record, that the trial court abused its discretion when it failed to terminate respondent's maintenance obligation to petitioner.

The Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 
et seq.
 (West 1998)) seeks to encourage the trial courts to provide for the financial needs of spouses by property disposition rather than by awards of maintenance.  
In re Marriage of Mayhall
, 311 Ill. App. 3d 765, 767-68 (2000).  Under the Act, the major consideration in awarding maintenance is the necessity to obviate marriage-conditioned needs and to enable a formerly dependent spouse to acquire financial independence for the future.  
In re Marriage of Mittra
, 114 Ill. App. 3d 627, 635 (1983).

Maintenance is not the absolute right of every party to a marriage.  
Mayhall
, 311 Ill. App. 3d at 768.  The modification of maintenance may include the termination of maintenance.  
Mayhall
, 311 Ill. App. 3d at 770, citing 
In re Marriage of Lenkner
, 241 Ill. App. 3d 15, 18 (1993).  Section 510 of the Act provides that maintenance may be modified only where the moving party can demonstrate a "substantial change in circumstances."  750 ILCS 5/510(a) (West 1998).  The failure of the person receiving maintenance to make good-faith efforts to achieve financial independence, 
e.g.
, to seek employment, can be the basis for a petition for modification pursuant to section 510(a) (750 ILCS 5/510(a) (West 1998)).  
Mayhall
, 311 Ill. App. 3d at 770.

Respondent cites 
In re Marriage of Henzler
, 134 Ill. App. 3d 318 (1985), in support of his petition to terminate maintenance.  In 
Henzler
, the parties' marriage was dissolved in 1980 after 20 years of marriage.  The trial court awarded rehabilitative maintenance to the former wife and expressed that maintenance was provided " 'to permit [the former wife] to acquire marketable job skills and become self-supporting.' "  
Henzler
, 134 Ill. App. 3d at 320.  In 1984 the former husband filed a petition to terminate maintenance, stating that the former wife obtained a college degree in accounting and acquired marketable skills that enabled her to become self-sufficient.  The former wife was employed and received an annual salary of $17,500.  The trial court reduced the maintenance award from $1,000 per month to $750 per month, and the former husband appealed.  The reviewing court reversed, relying on 
Mittra
, and determined that the former wife had achieved the statutory goal of rehabilitative maintenance.  
Henzler
, 134 Ill. App. 3d at 323; see also 
In re Marriage of Frus
, 202 Ill. App. 3d 844 (1990).

In the present case, petitioner obtained a bachelor's degree in fine arts with honors, paid for by respondent pursuant to the trial court's order.  Petitioner was employable, her children were emancipated, she had received a substantial amount of the marital assets, and she has no apparent health impairments that might restrict her from working.  The trial court's 1996 maintenance review decision clearly reflects that petitioner was under an affirmative obligation to seek appropriate employment to become self-sufficient.  Yet, the record also reflects that, in the four years since she graduated from college, petitioner had done little toward finding gainful employment or advancing her efforts at becoming self-sufficient.  The trial court's judgment serves as a disincentive to petitioner to achieve financial independence,  prolongs petitioner's dependence and respondent's litigation expenses, and discourages judicial economy.  We find that petitioner has achieved the statutory goal of rehabilitative maintenance and conclude that the trial court abused its discretion when it failed to grant respondent's motion to terminate maintenance.

We, therefore, reverse the trial court's award of maintenance and remand this cause to the trial court with directions to enter an order terminating maintenance.

Last, respondent contends that the trial court abused its discretion when it ordered him to pay petitioner's attorney fees in the amount of $4,500.  Attorney fees are generally the responsibility of the party who incurred the fees.  
In re Marriage of McGuire
, 305 Ill. App. 3d 474, 479 (1999).  Section 508(a) of the Act provides in part:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for [her or] his own or the other party's costs and attorney's fees."  750 ILCS 5/508(a) (West 1998).

" 'The propriety of an award of attorney fees is dependent upon a showing by the party seeking them of an inability to pay and a demonstration of the ability of the other spouse to do so.' "  
In re Marriage of Minear
, 181 Ill. 2d 552, 562 (1998), quoting 
In re Marriage of Bussey
, 108 Ill. 2d 286, 299-300 (1985).  A court may consider a party's prospective as well as her or his current income in awarding attorney fees.  
In re Marriage of Krivi
, 283 Ill. App. 3d 772, 782 (1996), citing 
In re Marriage of Phillips
, 244 Ill. App. 3d 577, 595 (1993).  The spouse seeking the award of attorney fees need not be destitute (
In re Marriage of Broday
, 256 Ill. App. 3d 699, 706 (1993)); it is sufficient that payment would exhaust the spouse's estate or strip the spouse's means of support or undermine the spouse's economic stability (
Carpenter
, 286 Ill. App. 3d at 976).  The allowance of attorney fees in a dissolution case and the proportion to be paid by each party are within the trial court's discretion and will not be disturbed on appeal absent an abuse of that discretion or unless it is against the manifest weight of the evidence.  
Minear
, 181 Ill. 2d at 561.

The evidence established that petitioner's fees were approximately $4,500, the payment of which would compel petitioner to invade her financial assets, further exhaust her estate, and clearly undermine her economic stability.  Respondent's salary, approximately $270,000 per year, established his financial ability to pay petitioner's attorney fees.  Thus, the trial court did not abuse its discretion by ordering respondent to pay petitioner's attorney fees.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed in part, vacated in part, and reversed in part, and the cause is remanded with directions.

Affirmed in part, vacated in part, and reversed in part; cause remanded with directions.

INGLIS and McLAREN, JJ., concur.