*In re* MARRIAGE OF STEPHANIE M. THORNLEY, Petitioner-Appellee, and JASON P. THORNLEY, Respondent-Appellant.

Fourth District    No. 4—05—0178

Opinion filed November 9, 2005.

Matthew J. Maurer, of Springfield, for appellant.

James Alexander Pappas, of Springfield, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

On November 24, 2003, Stephanie Thornley filed a petition for dissolution of her marriage to Jason Thornley. A Sangamon County trial court found that the factors it considered in dividing the marital estate favored an unequal distribution to Stephanie and awarded a greater share of the marital property to her. The court also ordered Jason to pay Stephanie $18,000 maintenance in gross. Jason appeals, arguing that the court improperly distributed marital property and debt and lacked the authority to award Stephanie maintenance. We affirm.

## I. BACKGROUND

Stephanie and Jason Thornley married on June 30, 2001. They had no children as a result of the marriage. The couple separated in August 2003, and Stephanie filed a petition for dissolution of marriage on November 24, 2003. In the petition, she requested an order awarding her an equitable share of the marital property and "denying maintenance to the [p]etitioner and [r]espondent." The trial court held a hearing on October 13, 2004, at which the following was elicited.

Stephanie testified that during the marriage she was employed full time. She earned approximately $900 every two weeks. Jason was not employed, but attended Palmer College of Chiropractic. He periodically received money for living expenses. Stephanie believed that the amount averaged $2,500 on each occasion, but Jason testified that he received approximately $5,000 for living expenses per trimester, which he had to repay as part of his student loans. The couple had been married for seven trimesters before they separated, so Jason estimated that he had received about $35,000 for living expenses while they were together. However, Jason later stated that Palmer College charged him $120,000 for his 10 trimesters at the school, and he received $140,000 in student loans, including the money for living expenses.

The couple deposited Stephanie's paycheck and Jason's living expenses funds into a joint checking account. Jason acknowledged that the majority of the deposits into the account were from Stephanie's employment. They paid some of Jason's school expenses from the account, including $350 for Jason's board exam and $2,190 and $5,835 payments to Palmer College. On November 25, 2003, Stephanie withdrew $4,191.82 from the account, leaving a balance of $3,086.09.

Stephanie and Jason also had a Morgan Stanley brokerage account that they funded with money from their checking account. Stephanie testified that in June 2004 she withdrew the entire balance, $7,166.38, but had not cashed the check she received.

Stephanie stated that she had a City American Airlines Master-Card in her name and that Jason was a cardholder. She submitted statements reflecting various charges Jason made at the Palmer College bookstore. He did not reimburse her for those amounts.

Jason had opened a Verizon credit card prior to the marriage. Stephanie was not a signatory. Jason admitted that Stephanie had paid the balance on the card before the two married. He estimated that the amount had been $2,000, but Stephanie believed that it was about $3,000. After they married, the couple occasionally used the Verizon card, such as for some expenses from their trip to Fiji and Australia. Stephanie estimated that they charged $2,000 on the Verizon card together. Jason stated that the current balance on the Verizon card was $8,578.

Jason testified that he had opened an MBNA credit card after he and Stephanie separated. The balance at the time of the hearing was $5,284.

Stephanie testified that during their marriage she and Jason paid two loans that Jason had obtained prior to their marriage, estimating a $2,000 payment to Illinois State University and a $1,000 payment to

Monmouth College. However, Jason testified that the couple had only paid a Monmouth College loan for $500. He stated that he had sent a check for $1,660 to Illinois State University, but the University sent the check back without cashing it because the loan had been consolidated into his other loans.

Stephanie and Jason had two cars, a 2001 Malibu and a 2002 Yukon. Stephanie testified that her parents had given her the Malibu as a gift prior to her marriage to Jason. The car had been titled to "Stephanie M. Seitz and Jason R. Thornley" because they had been engaged to be married at the time. Jason had that car in his possession at the time of the hearing. Stephanie's parents had given her the Yukon while she was married to Jason. Both Stephanie's and Jason's names were on the title. Stephanie had that car at the time of the hearing.

Jason offered into evidence Kelly Blue Book estimates of each car's value. The trade-in value for the Malibu was $2,670, private party value was $4,710, and retail value was $8,090. However, it had some damage from an accident that Jason and Stephanie had agreed not to repair. The trade-in value for the Yukon was $14,805, private party value was $18,285, and retail value was $23,360.

During the marriage, Stephanie and Jason opened a Sears credit card to purchase a washer and dryer for about $800. They had paid off the account. Jason had possession of the washer and dryer at the time of the hearing, but stated that he did not object to them going to Stephanie.

Jason's affidavit of income and expenses estimated his expenses as $345 per month. He testified that he lived with his girlfriend, who contributed to his living expenses. Jason's school loans were in forbearance for a year, but he believed that he will eventually have to pay about $596 per month.

Jason stated that he had finished his education and was employed as a teacher by Metropolitan Community College. He was teaching because he was waiting for the results of his board exam and license. His gross income was $2,143.76 per month. Jason stated that a new chiropractor can earn between $10,000 and $50,000 a month. He planned to work for an individual after he received his license but had made no agreements with anyone.

On January 31, 2005, the trial court entered a memorandum of opinion stating in part, "In dividing the marital estate, the court must consider the contribution each party made to the accumulation of the assets and liabilities of the marriage; the ability of each party to accumulate assets in the future; and the relative economic circumstances of the parties. Each factor favors an unequal distribution to Ms. Thorn-

ley." The court awarded the proceeds from the brokerage account, the washer and dryer, and the Yukon to Stephanie. It awarded Jason the Malibu. Each party received the other personal property in his or her possession and bank accounts in his or her name. Each had the responsibility to pay the financial obligations in his or her name.

Citing section 504(a)(10) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/504(a)(10) (West 2004)), the trial court then considered Stephanie's contributions to Jason's education, training, career or career potential, and license. It awarded Stephanie $18,000 maintenance in gross, to be paid in 24 monthly installments of $750, beginning January 1, 2005.

On February 16, 2005, the trial court entered a judgment for dissolution of marriage consistent with and incorporating its memorandum of opinion. This appeal followed.

## II. ANALYSIS

### A. Distribution of Marital Property

Jason first argues that the trial court improperly distributed marital property and debt. He contends that the court's decision to award Stephanie property worth more than $30,000, while it awarded him property worth only $5,000, was arbitrary and without reason. He also challenges the court's division of debt. Jason must pay the MBNA credit card balance of $5,284 for purchases he made after he separated from Stephanie, the Verizon credit card balance of $8,579, and his student loans from chiropractic college, totaling over $140,000. Stephanie must pay the American Airlines MasterCard balance, but neither party presented evidence regarding the amount owed.

■ Section 503(d) of the Dissolution Act requires a trial court to divide marital property "in just proportions considering all relevant factors." 750 ILCS 5/503(d) (West 2004). "The touchstone of proper and just apportionment is whether it is equitable in nature," which does not require mathematical equality. *In re Marriage of Dunlap*, 294 Ill. App. 3d 768, 778, 690 N.E.2d 1023, 1029 (1998). We will not disturb a trial court's division of marital assets unless it has clearly abused its discretion. *In re Marriage of Crook*, 211 Ill. 2d 437, 453, 813 N.E.2d 198, 206 (2004).

■ ■ Factors relevant in determining the just apportionment of marital property include the contributions of each party, the duration of the marriage, the relevant economic circumstances of each spouse, and the reasonable opportunity of each spouse for future acquisition of assets and income. 750 ILCS 5/503(d)(1), (d)(4), (d)(5), (d)(11) (West 2004). Though Stephanie and Jason's marriage was relatively short, the trial court found that other factors favored an unequal distribu-

tion to Stephanie. It noted that, during the marriage, Jason relied on Stephanie for support while he attended school, stating that "[t]here was very little, if any, money from the loan proceeds over and above the cost of tuition and other school expenses. *** In addition, Ms. Thornley directly paid some of the chiropractic college expenses Mr. Thornley incurred." The court also found that when Jason receives his license, "he anticipates that his income will increase to $10,000 to $50,000 per month." The court's apportionment of marital property and debt admittedly favors Stephanie, but it did not abuse its discretion. Accordingly, we affirm the court's judgment distributing marital property and debt.

## B. Maintenance

Jason next argues that the trial court improperly awarded Stephanie maintenance. He contends that the court exceeded its authority because Stephanie's petition specifically requested an order "denying maintenance to the [p]etitioner and the [r]espondent." Stephanie claims that Jason forfeited this issue by not objecting at the hearing or filing a motion to reconsider. However, the evidence presented at the October hearing was pertinent to the division of marital assets as well as maintenance; Jason could not be expected to object to such testimony. Illinois Supreme Court Rule 366(b)(3)(ii) (155 Ill. 2d R. 366(b)(3)(ii)) permits our review of substantive matters in nonjury cases even if the appellant has not filed a postjudgment motion. See *In re Marriage of Steadman*, 283 Ill. App. 3d 703, 712, 670 N.E.2d 1146, 1153 (1996).

In *In re Marriage of Hochleutner*, 260 Ill. App. 3d 684, 685, 633 N.E.2d 164, 165 (1994), the petitioner asked that the trial court bar the respondent from maintenance, distribute the parties' property, and for " 'such other and further or different relief the [c]ourt may deem just.' " The respondent appeared at an evidentiary hearing but did not file a response. *Hochleutner*, 260 Ill. App. 3d at 687, 633 N.E.2d at 166. When the court awarded the respondent maintenance, the petitioner appealed. He argued that, because the respondent never requested maintenance, the issue was never raised, and he was never placed on notice so as to challenge such an award; therefore, the court exceeded its authority in granting it. *Hochleutner*, 260 Ill. App. 3d at 689, 633 N.E.2d at 167. He conceded, however, that "a judgment of the court can be upheld if the relief was *generally* prayed for and was supported by the evidence." (Emphasis in original.) *Hochleutner*, 260 Ill. App. 3d at 689, 633 N.E.2d at 168.

The appellate court found that the trial court did not exceed its authority because the petitioner raised the issue of maintenance in his

prayer for relief by asking that the court bar the respondent from receiving it. *Hochleutner*, 260 Ill. App. 3d at 690, 633 N.E.2d at 168. It further found that "in addition to raising the issue of maintenance generally, petitioner also prayed for 'such other and further or different relief the [c]ourt may deem just.' \*\*\* No more specific pleading was required under the circumstances." *Hochleutner*, 260 Ill. App. 3d at 690-91, 633 N.E.2d at 169. The court noted that where a marriage dissolution statute authorizes maintenance under just or equitable terms, "all that is required to sustain the award is that the recipient be entitled to it and the award be equitable." *Hochleutner*, 260 Ill. App. 3d at 691, 633 N.E.2d at 169.

In *In re Marriage of Culp*, 341 Ill. App. 3d 390, 792 N.E.2d 452 (2003), the trial court originally ordered the petitioner to pay the respondent rehabilitative maintenance, which was reviewable on a specific date " 'without the necessity of either party filing further pleadings.' " *Culp*, 341 Ill. App. 3d at 393, 792 N.E.2d at 454. Following the review, the court awarded the respondent permanent maintenance. *Culp*, 341 Ill. App. 3d at 393-94, 792 N.E.2d at 455. On appeal, that petitioner argued "the trial court lacked the authority to modify the maintenance award to one of permanent maintenance *sua sponte*," citing *In re Marriage of Cantrell*, 314 Ill. App. 3d 623, 732 N.E.2d 797 (2000). *Culp*, 341 Ill. App. 3d at 394-95, 792 N.E.2d at 456. The Second District held in *Cantrell* that the trial court had erred by awarding the recipient permanent maintenance where she had only requested a continuation of rehabilitative maintenance, in part, because the court had exceeded the relief requested in her pleadings. *Cantrell*, 314 Ill. App. 3d at 628, 732 N.E.2d at 801-02.

In *Culp*, this court found:

> "[T]he *Cantrell* court did not hold a trial court may never exceed the relief requested by parties in their pleadings; the court merely held the record in the case before it lacked circumstances to justify an award of permanent maintenance absent a request in the pleadings for such relief." *Culp*, 341 Ill. App. 3d at 395, 792 N.E.2d at 456, citing *Cantrell*, 314 Ill. App. 3d at 628, 732 N.E.2d at 801-02.

This court also noted that "a trial court may exceed the relief requested by a party as an exercise of its discretion in determining the appropriate duration of a maintenance award." *Culp*, 341 Ill. App. 3d at 397, 792 N.E.2d at 458.

Like the petitioner in *Hochleutner*, Stephanie raised the issue of maintenance. She alleged in her petition that "there is no agreement or understanding as to the maintenance of either party" and prayed for an order denying maintenance and "such other and further relief as the [c]ourt deems equitable and just." Pursuant to *Culp* and *In re*

*Marriage of Cheger*, 213 Ill. App. 3d 371, 571 N.E.2d 1135 (1991), the trial court in this case had the authority to exceed the relief Stephanie requested and, like the courts in those cases, exercised its discretion in doing so. Therefore, the only remaining issue is whether the award is supported by the evidence. *Hochleutner*, 260 Ill. App. 3d at 689, 633 N.E.2d at 168.

The supreme court recently refused to allow a spouse to retract her waiver of maintenance simply because the circuit court did not accept her valuation of her ex-husband's dental practice. *In re Marriage of Schneider*, 214 Ill. 2d 152, 172, 824 N.E.2d 177, 188-89 (2005). In *Schneider*, however, there was a clear waiver of maintenance, along with a stipulation as to gross and net income from the dental practice. *Schneider*, 214 Ill. 2d at 156, 824 N.E.2d at 179. The ex-wife did not dispute that she had waived maintenance, arguing instead that the court abused its discretion in failing to *sua sponte* declare her waiver of maintenance unconscionable when it excluded goodwill and/or accounts receivable from the valuation of the dental practice. *Schneider*, 214 Ill. 2d at 172, 824 N.E.2d at 188.

In the present case, however, no formal waiver of maintenance occurred, only a suggestion to the trial court in the pleadings that it was best to resolve the matter by a distribution of property rather than an award of maintenance. The suggestion did not deprive the court of its discretion to award maintenance. The parties were aware that an award of maintenance was possible. Even if the pleadings were not technically correct, a pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs. 735 ILCS 5/2—616(c) (West 2004).

Section 504 of the Dissolution Act sets out a number of factors a trial court may consider in determining whether a maintenance award is appropriate. 750 ILCS 5/504(a) (West 2004). The section lists as relevant the income and property of each party, including marital property apportioned to the party seeking maintenance, the present and future earning capacity of each party, the duration of the marriage, and the contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse. 750 ILCS 5/504(a)(1), (a)(3), (a)(7), (a)(10) (West 2004). Though professional licenses and scholastic degrees do not constitute a property interest subject to division as a marital asset, "the contributing spouse must receive some form of compensation for the financial effort and support provided to the student spouse in the expectation that the marital unit will prosper in the future." *In re Marriage of Rubinstein*, 145 Ill. App. 3d 31, 39, 495 N.E.2d 659, 664 (1986). "There are three principal methods of affording compensation:

(1) distribution of marital assets; (2) some form of maintenance or alimony; or (3) an equitable monetary award based on some equitable principle." *Rubinstein*, 145 Ill. App. 3d at 39, 495 N.E.2d at 664. An award of maintenance in gross may be proper where one spouse has supported the other as he obtained his license or degree. See *In re Marriage of Weinstein*, 128 Ill. App. 3d 234, 245, 470 N.E.2d 551, 559-60 (1984). "In any event, the propriety of a maintenance award is within the discretion of the trial court and the court's decision will not be disturbed absent an abuse of discretion." *Schneider*, 214 Ill. 2d at 173, 824 N.E.2d at 189.

■ At the hearing, the trial court heard evidence regarding Jason's present and future earning capacity, the duration of the marriage, and the contributions Stephanie made toward Jason's education during that time. In its memorandum of opinion, the court wrote:

> "The entire focus of this marriage was getting Mr. Thornley through chiropractic school. While much of the expense was borrowed, and this court has directed Mr. Thornley to pay those student loans, and while the court has disproportionately distributed the majority of the assets to Ms. Thornley, the allocation of property falls short of that which is needed to equitably divide the marital estate and recognize Mr. Thornley's career potential when he becomes Dr. Thornley."

Accordingly, the court awarded Stephanie $18,000 as maintenance in gross. Because the court properly considered relevant factors and ordered maintenance consistent with the principles set forth in *Rubinstein*, the court did not abuse its discretion.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON and KNECHT, JJ., concur.