NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210732-U

NO. 4-21-0732

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 28, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| DAUNA BECK BURNS, | ) | Circuit Court of |
|     Petitioner-Appellant, | ) | Edgar County |
|     and | ) | No. 19D49 |
| GARY M. BURNS, | ) | |
|     Respondent-Appellee. | ) | Honorable |
| | ) | Matthew L. Sullivan, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Knecht and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court remanded for the circuit court to clarify its judgment with respect to the financial issues involved in the dissolution proceeding.

¶ 2    Petitioner, Dauna Beck Burns, appeals from the circuit court's judgment dissolving her marriage to respondent, Gary M. Burns. On appeal, Dauna argues the circuit court erroneously (1) deviated below the statutory maintenance guideline amount, (2) refused to award her retroactive maintenance, and (3) valued and divided a retirement account as of the date of the hearing on grounds for dissolution, rather than the date of the judgment of dissolution. For the reasons that follow, we remand for the circuit court to clarify its judgment with respect to the financial issues involved in this dissolution proceeding.

¶ 3    I. BACKGROUND

¶ 4    A. Procedural History

¶ 5	In June 2019, Dauna filed a petition for dissolution of marriage. At the time, Dauna resided in Illinois, and Gary resided in Indiana. Dauna sought, in addition to a dissolution of the marriage and other relief, an award of maintenance.

¶ 6	Shortly after the filing of Dauna's petition for dissolution of marriage, Gary filed a motion to dismiss on the grounds that there was a pending action for a dissolution of the parties' marriage in Indiana. Following a July 2019 hearing, the circuit court granted Gary's motion.

¶ 7	In February 2020, Dauna filed a petition to reinstate her petition for dissolution of marriage on the grounds that the dissolution action in Indiana had been dismissed. Following an October 2020 hearing, the circuit court granted Dauna's petition.

¶ 8	In March 2021, Dauna filed a petition for temporary maintenance. According to a docket entry entered that same month, the circuit court scheduled a hearing "for temporary petition and grounds" in April 2021 and "for all other pending matters" in June 2021.

¶ 9	On April 29, 2021, the circuit court, according to a docket entry, conducted a hearing "on grounds." The docket entry provides that "[j]udgment for dissolution—grounds only will be entered when submitted." The docket entry also provides that the case was continued "for all pending matters" to June 2021.

¶ 10	In June 2021, the circuit court continued the hearing on the financial issues to July 2021. In July 2021, the court, on motion of Dauna and without objection from Gary, continued the hearing to September 2021. In September 2021, the court granted Dauna's motion to continue the hearing over Gary's objection; the court set a new hearing date of October 2021. The court stated that "[a]ny further continuances will require a medical report showing necessity."

¶ 11	On October 13, 2021, Gary filed a motion to enter a judgment of dissolution of marriage. Gary's motion asserted that, "the parties were granted a dissolution of marriage and

granted leave to file a Judgment of Dissolution of Marriage" on April 29, 2021. Gary later prepared a proposed judgment of dissolution of marriage, but Dauna refused to sign it. Gary asserted that the proposed judgment, which was attached to his motion, accurately reflected the circuit court's ruling from April 29, 2021, and should be entered by the court. The proposed judgment recited that the court found grounds for dissolution at the April 29, 2021, hearing and continued the case "for determination of all other respective interests and subsequent [*sic*] reserves the following issues, division of debts, assets, and maintenance of either spouse or all other disposition of property."

¶ 12                    B. Hearing on Financial Issues

¶ 13        At the commencement of the October 29 hearing on financial issues, the court, on Gary's motion, entered the proposed judgment of dissolution of marriage, finding it "accurately reflect[ed] what took place" at the April 29, 2021, hearing on grounds. The judgment order was not entered *nunc pro tunc*. After the entry of the judgment order, Dauna moved to continue the hearing for what she characterized as medical reasons. Gary objected. The court denied Dauna's motion, finding it was not supported by a medical report showing necessity. The parties then presented evidence concerning the financial issues. The following is gleaned from the evidence presented.

¶ 14        The parties were married in June 1998, and they had one child during the marriage. At the time of hearing on the financial issues, Dauna was 56 years old, Gary was 51 years old, and the parties' child was 21 years old.

¶ 15        Throughout the marriage, Gary was primarily responsible for obtaining an income for the family, while Dauna was primarily responsible for caring for the parties' child and maintaining the home. For a time, Dauna also operated an online business that involved the

purchasing of Internet domains.

¶ 16        The parties purchased two properties during the marriage, one in Paris, Illinois (Paris property), and the other in Boswell, Indiana (Boswell property). The Paris property was the parties' primary residence.

¶ 17        The parties began living separately for about four or five years prior to the hearing on the financial issues. Gary moved to the Boswell property, while Dauna and the parties' child remained at the Paris property. After about two years of living at the Boswell property, Gary moved elsewhere in Indiana, later moving to Missouri following a job transfer. At the time of the hearing on the financial issues, Gary resided in Missouri, while Dauna and the parties' child continued to reside in Illinois at the Paris property.

¶ 18        Early in the separation, Gary would drive to the Paris property on weekends to get groceries for the family. He did this because Dauna's driver's license had lapsed. Gary testified he paid for other expenses of Dauna for the first two to three years after the parties' separation, including expenses for electricity, garbage, and a cell phone, but he stopped paying Dauna's expenses on advice of his counsel from the Indiana proceedings. Gary continued to pay the taxes and insurance on both the Paris and Boswell properties through the date of the hearing on the financial issues. He also made payments on a loan for the Paris property through the date of the hearing. Dauna explained she had to borrow money from a friend to cover expenses. She estimated her friend had "loaned or given" her in excess of $25,000 since the parties' separation.

¶ 19        Gary had a retirement account through his employer. Dauna presented an exhibit showing the account having a balance of $119,401.09 and an outstanding loan of $2832.98 as of April 30, 2021. On examination by his counsel, Gary testified he had looked at the account recently and noticed the value of its assets was "just a little higher," approximately $129,000. He also

noticed the outstanding loan was approximately $2500 lower.

¶ 20         Gary testified the parties purchased the Paris property for about $90,000 or $98,000 with funds from a variable-rate loan. According to Gary, they still owed about $46,000 or $48,000 on the loan, and the monthly loan payment had been about $350. The yearly taxes on the property were about $2000, and the monthly insurance on the property was $165. Gary had not been to the property for several years. Gary valued the property at $87,000 based upon his review of a county assessment. Dauna testified about damage to the property, for which she had received a repair estimate of between $9000 and $18,000; she introduced photographs showing the damage. As to the Boswell property, the parties purchased the property for about $30,000 with funds from the retirement account and Dauna's father. Gary had not been to the Boswell property in two years, and Dauna had never been there. Dauna selected the furniture at the property. Gary valued the property at $54,000 based upon his review of a county assessment.

¶ 21         The parties owned several vehicles, none of which were operable and most of which were located at the Paris property. After the vehicle Gary had been using became inoperable, he sold it to a junk yard for $375.

¶ 22         Gary testified about a marital debt owed to the Internal Revenue Service going "back five years." Gary had been making $300 monthly payments on the debt. Gary sought the assistance of a tax professional, who prepared amended tax returns for the previous three years. The amended tax returns, if signed by Dauna, would allow the parties to receive refunds totaling approximately $18,000. While Dauna initially refused to sign the amended tax returns, she eventually signed the returns during the hearing on the financial issues.

¶ 23         Dauna testified about being in financial turmoil since the parties' separation. She no longer had her Internet domain business. The parties' child, who had several medical issues,

continued to live with her. Dauna unsuccessfully attempted to obtain employment at a church and suggested she could not seek other employment due to medical issues. She did not, however, have supporting documentation. Neither she nor the parties' child received disability benefits. Dauna testified she previously worked as a model, "an elected official," and an artist.

¶ 24 Gary's income in 2020, including wages and a bonus, was approximately $98,378. Gary explained his employment bonus varied each year, ranging from $0 to $8000. Gary rented an apartment in Missouri with another adult. The rent for the apartment was about $1150 per month. Gary did not ask the other tenant to assist with the apartment expenses.

¶ 25 Both parties were examined about the contents of financial affidavits that they had previously filed with the circuit clerk. The financial affidavits appear in the common law record but were not admitted into evidence.

¶ 26 After presenting evidence, the parties provided proposals concerning the financial issues. With respect to maintenance, Dauna submitted two monthly calculations, one which imputed a minimum-wage income to her and one which did not. Dauna's calculation which imputed a minimum-wage income to her was $1423, while her calculation which did not impute an income to her was $1954.59. Gary submitted a single monthly maintenance calculation which imputed a minimum-wage income to Dauna. Gary's calculation was $1279.17.

¶ 27 Dauna proposed she be awarded (1) the "full maintenance amount" on a permanent basis, (2) half of the retirement account, (3) the Paris property, (4) any vehicle located at the Paris property that could be made operable, (5) half of the tax refunds, (6) $6500 to cover her attorney fees, and (7) the furniture from the Boswell property. In addition, Dauna requested, "in lieu of a retroactive maintenance award, that she also be repaid the amount that she has borrowed from her friends [*sic*] which is shown at $25,000 on her Financial Affidavit which would actually and

probably approximate a retroactive maintenance award to the date that she first requested it." Dauna further proposed the Boswell property and the other marital vehicles be sold and the profits divided equally between the parties.

¶ 28 Gary, in turn, initially asserted the circuit court should find Dauna was entitled to maintenance of $1279.17 for 251 months, for a total of $321,071.67. In the interest of eliminating future contact between the parties, Gary proposed that Dauna, instead of being awarded maintenance, receive (1) the retirement account, (2) the Paris property, (3) the Boswell property, and (4) the tax refunds. In addition, Gary proposed he be ordered to continue to pay the loan on the Paris property until it is paid off. In the event the court believed the value of the assets was insufficient to eliminate an award of maintenance, Gary proposed Dauna receive a reduced maintenance award to offset a disproportionate share of the marital estate awarded to her.

¶ 29 Upon receiving the proposals, the circuit court allowed the parties an opportunity to respond to each other's proposals.

¶ 30 Dauna suggested to the circuit court that it could not value the properties based upon the evidence presented. The court then, upon confirming Dauna's desire to have the Paris property awarded to her, inquired how it could equitably divide the marital estate without assigning a value to that property. At that point, Dauna backtracked, suggesting the court could assign a value to the Paris property but, in doing so, should take into consideration the repairs of "at least $15,000" and the loan for the property.

¶ 31 Gary, in turn, addressed matters to which he had previously not responded. Gary objected to him "being responsible for the Boswell [*sic*] repayment of a loan," arguing "there was not proof of that loan or its outstanding balance owed to anyone." Gary also encouraged the circuit court to consider "that a lot of the delays in this matter which have prolonged this has been

attributable to [Dauna].” Gary argued Dauna’s request for attorney fees should be denied.

¶ 32        Dauna, as a final comment, asserted a strictly asset-based award would be inappropriate because of various issues with liquidity and taxes.

¶ 33        Immediately prior to rendering its oral pronouncement of its decision, the following exchange occurred between the circuit court and Dauna’s counsel:

> “THE COURT: [Counsel], what’s your—depending on how I divide these assets, I guess I would like to hear your thoughts on deviating from the strict maintenance calculation if she is receiving a more generous portion of the assets.
>
> [COUNSEL]: Well, Your Honor, I think that the Court always has discretion to do that and award in lieu of maintenance. I think that we would need to be careful that we’re offsetting an appropriate amount, but I think the Court always has discretion to do that. And with respect to—you know, in lieu of maintenance, I just don’t think there’s enough assets there.
>
> THE COURT: I agree with you regarding that.”

¶ 34        At the conclusion of the hearing, the court announced that it would award Dauna the Paris property, all the vehicles located at the Paris property, $6500 to cover her attorney fees, and the furniture at the Boswell property. The court found Dauna was entitled to 50% of the retirement account as of April 29, 2021, which the court stated “was the date of the dissolution.” The court later indicated, on inquiry by Dauna, that it was “allocating” the retirement account “[f]ifty percent to each as of April 29[ ], 2021.” The court ordered Gary to pay Dauna maintenance in the amount of $1000 for 251 months beginning November 15, 2021. So long as there was a loan

on the Paris property, Gary was to first pay the loan from the maintenance award and then give the remaining funds to Dauna. Dauna was made responsible for the taxes and insurance for the Paris property. The court directed the Boswell property be sold and the proceeds be divided evenly amongst the parties. The court awarded Gary the tax refunds but also made him responsible for any unresolved tax liabilities.

¶ 35        Following its decision, the circuit court asked the parties whether it had addressed all the financial issues; the parties confirmed that it had. The court directed the parties to submit a proposed supplemental judgment incorporating its findings on the financial issues.

¶ 36                C. Supplemental Judgment of Dissolution of Marriage

¶ 37        In November 2021, the parties submitted a proposed supplemental judgment incorporating the circuit court's findings "as to all financial matters." The proposed judgment was entered by the court.

¶ 38        This appeal followed.

¶ 39                        II. ANALYSIS

¶ 40        On appeal, Dauna argues the circuit court erroneously (1) deviated below the statutory maintenance guideline amount, (2) refused to award her retroactive maintenance, and (3) valued and divided the retirement account as of the date of the hearing on grounds for dissolution.

¶ 41         A. Deviation from the Statutory Maintenance Guideline Amount

¶ 42        Dauna argues the circuit court erroneously deviated below the statutory maintenance guideline amount. Specifically, Dauna contends the court's decision was not supported by sufficient factual findings and that, even if this court could find she received a disproportionate share of the marital estate, the share she received did not justify the reduced

maintenance award. Gary, in response, argues the court's reasons for its deviation from the statutory maintenance guideline amount are sufficiently established on the record, and the reduced maintenance award was justified given the disproportionate share of the marital estate awarded to Dauna.

¶ 43 Section 504(b-2)(2) of the Illinois Marriage and Dissolution of Marriage Act provides that "if the court deviates from applicable guidelines" for maintenance, "it *shall* state in its findings the amount of maintenance (if determinable) or duration that would have been required under the guidelines and the reasoning for any variance from the guidelines." (Emphasis added.) 750 ILCS 5/504(b-2)(2) (West 2020). Here, the trial court awarded a monthly amount below even the amount suggested by Gary. As Gary acknowledges, it appears that the trial court was aware it was awarding an amount less than the guidelines, but the court failed to make any finding as to the proper guideline amount. It is incontestable that there was not compliance with the requirements of section 504(b-2)(2).

¶ 44 Gary cites *Blum v. Koster*, 235 Ill. 2d 21 (2009), for the proposition that a court need not make specific findings in connection with its award of maintenance. However, *Blum* was decided before the adoption of the statutory requirement for such findings. Gary also relies on *In re Marriage of Shen*, 2015 IL App (1st) 130733, for the same proposition. Although the appellate decision in *Shen* was decided after the effective date of section 504(b-2)(2), the trial court proceedings and the maintenance decision at issue were made before the statute was in effect. It is unclear whether this aspect of *Blum* and *Shen* has been diminished by the subsequent enactment of section 504(b-2)(2). However, as we discuss below, the findings here are simply not sufficient in this case to evaluate the trial court's decision on maintenance. The trial court not only failed to establish the baseline per the guidelines, but it apparently considered the imbalanced division of

the Paris property without making a finding as to its net value.

¶ 45　　　　When it comes to the valuation of the marital assets, we do not know what value the trial court placed on the Paris property, nor do we know what the court found with respect to Dauna's claims of necessary repairs that might diminish that value. We also know that, however the disparity arising from the award of the Paris property is measured, it is offset to some extent by the award of the entire $18,000 tax refund to Gary. These unknowns are compounded by the fact that we do not know if the court imputed income to Dauna for purposes of the starting point on maintenance.

¶ 46　　　　It is true that an equitable division of marital property does not require "mathematical equality." *In re Marriage of Thornley*, 361 Ill. App. 3d 1067, 1071 (2005). However, if an imbalance in the division of assets is the reason to depart from the maintenance guidelines, it is important to have some concrete understanding of both the guideline amount and the value of the assets distributed. This record does not offer such an understanding, so we remand to the circuit court for clarification of the statutory guideline maintenance amount, the reasons for any deviation from this amount, and the value of the Paris property.

¶ 47　　　　　　　　　　B. Other Issues on Remand

¶ 48　　　　Maintenance and other financial issues in a dissolution proceeding are often interrelated. Adjusting one can be like pulling a thread, as doing so may lead to tinkering with others to achieve the desired equity. We have not reviewed the merits of the issues raised; we do not compel the trial court's ultimate actions on remand, nor do we seek to limit them.

¶ 49　　　　In closing, we note that that the trial court did an admirable job sorting through the issues on this complex case and fell short only by failing to make certain specific findings. The fault for that result does not lie entirely with the circuit court. After making its rulings, the court

specifically inquired of the parties whether it had addressed all necessary issues, and instead of noting the matters now at issue in this appeal counsel responded affirmatively. Even when preparing and reviewing the proposed judgment, counsel did not note the lack of certain findings, nor did they seek clarification from the court. Regardless of whether a posttrial motion was required to preserve any of these issues, it would have been easier and more economical for all involved if they had been brought to the attention of the trial court before this appeal was taken.

¶ 50                                        III. CONCLUSION

¶ 51         For the reasons stated, we remand for the circuit court to clarify its judgment with respect to the financial issues involved in this dissolution proceeding consistent with this order. The court, on remand, may invite the participation of the parties and conduct any further proceeding it deems warranted. A supplemental judgment clarifying and, if necessary, modifying the court's prior rulings should be entered. In the event a party is not satisfied with the supplemental judgment, that party may timely appeal from that supplemental judgment.

¶ 52         Cause remanded.