2020 IL App (2d) 190384-U
Nos. 2-19-0384 & 2-19-0752 cons.
Order filed November 17, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| ROBERT C. HEIST, | ) | of Lake County. |
| | ) | |
| Petitioner-Appellant-Cross-Appellee, | ) | |
| | ) | |
| and | ) | No. 09-D-938 |
| | ) | |
| KENDELLE L. CORNETTE f/k/a | ) | |
| Kendelle Heist, | ) | Honorable |
| | ) | D. Christopher Lombardo, |
| Respondent-Appellee-Cross-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hudson and Bridges concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court erred in interpreting the scope of our remand order as to the maintenance order. The trial court abused its discretion in awarding indefinite maintenance. The trial court's valuation of marital debt was not contrary to the manifest weight of the evidence, and the trial court did not abuse its discretion in allocating the marital debt. There is no basis for reversal of the trial court's allocation of proceeds from the sale of the marital residence. The trial court did not err in denying leave to reopen discovery and proofs on the issue of dissipation. Accordingly, we affirm in part, reverse in part, vacate in part, and remand to the trial court for the sole purpose of conducting a maintenance-review hearing.

¶ 2   This consolidated appeal arises out of a dissolution of marriage proceeding between petitioner, Robert C. Heist, and respondent, Kendelle L. Cornette. The final dissolution judgment

was entered January 9, 2015. This is the parties' second appeal. Following the first appeal, we affirmed the judgment in part, reversed the judgment in part, and remanded the case for further proceedings consistent with our disposition. *In re Marriage of Heist*, 2016 IL App (2d) 150095-U (*Heist I*). Robert appeals from the trial court's orders following remand; Kendelle cross-appeals. The issues involve the scope of our remand, the award of indefinite maintenance to Kendelle, the allocation of Kendelle's prejudgment debt and expenses, and the allocation of expenses relating to the sale of the marital home. For the reasons set forth below, we affirm the judgment in part, reverse the judgment in part, vacate the judgment in part, and remand to the trial court for the sole purpose of conducting a maintenance-review hearing.

¶ 3                                        I. BACKGROUND

¶ 4     We discussed the procedural history and trial evidence at length in *Heist I*. See *Heist I*, 2016 IL App (2d) 150095-U. We recount the information necessary to place into context the parties' arguments in this appeal. Robert and Kendelle were married on June 3, 1995, when they were both 31 years old. No children were born to the parties during the marriage. Robert filed a petition for dissolution of marriage on May 13, 2009.

¶ 5                               A. Trial and Dissolution Judgment

¶ 6     Judge Jay W. Ukena, conducted a 14-day trial over the course of 17 months. The trial concluded on November 13, 2012, and the parties submitted closing arguments and proposed dissolution judgments in January 2013. Twenty months later, on July 1, 2014, the trial court entered a dissolution judgment.

¶ 7     The dissolution judgment set forth various findings with respect to the parties' income and the award of maintenance to Kendelle, the allocation of marital property and debt, and the parties' claims regarding dissipation of marital assets. Relevant to this appeal, the trial court found that

both parties were continuously employed during the marriage. Robert, an attorney, was the sole owner of the law firm R. Connor & Associates, P.C. (RCA). Kendelle was the sole owner of the interior design and decorating firm Interior Decorum & Antiques d/b/a Kendelle Cornette Interiors (KCI). The trial court awarded each party exclusive interest in their respective businesses.

¶ 8     The trial court found that Robert's average annual income was $377,212.75. This sum encompassed $223,537.75 in annual income from RCA as reflected in tax returns from 2005 to 2008; an average of $100,000 in annual income from his positions on the board of directors and board of managers of the Hershey Trust Company and Hershey School; and an average of $26,837.50 in annual imputed income from Robert's use of RCA credit cards from 2006 to 2010, which amount was for personal expenses.

¶ 9     The trial court found that Kendelle's average annual income was $26,098.02. This determination was based upon the parties' 2006 to 2010 tax returns.

¶ 10     The trial court turned to the award of maintenance. In Kendelle's written closing argument and proposed dissolution judgment, she requested an award of reviewable, rehabilitative maintenance in the amount of $6250 per month for a period of 60 months. Notwithstanding, the trial court awarded Kendelle indefinite maintenance in the amount of $6000 per month. According to the trial court, Kendelle "is in need of indefinite maintenance" because "[t]his is nearly a 20-year marriage"; Robert "has a far greater capacity to earn income presently and in the future"; "both parties are around 50 years of age"; and the marital lifestyle was "upper middle class." The trial court found that Kendelle "would need approximately $100,000 per year in income" to maintain the marital lifestyle, comprised of "her average income of approximately $26,000 plus an additional $72,000 per year in maintenance or $6,000 per month"—a sum that the trial court found represented "approximately twenty percent" of Robert's gross income.

¶ 11   As to the allocation of marital property, including a house and condominium in Lake Forest, the trial court awarded Kendelle a 55% share and Robert a 45% share. Noting the lack of any evidence as to the value of the Lake Forest properties, the trial court ordered the parties to hire a real estate broker within 30 days to facilitate the sale of the properties with the funds to be distributed accordingly. The trial court further ordered that before distribution of the proceeds to the parties, "the existing mortgages, real estate taxes, property insurance payments, real estate transaction attorney fees, real estate transfer taxes, real estate broker commissions and all sale related costs shall be paid from the sale proceeds" and "any and all credits as ordered by this Court will be accounted for by the escrow agent consistent with this order."

¶ 12   The trial court rejected Robert's claim for a credit of one-half of the expenditures necessary to maintain both properties during the dissolution proceeding, finding that Robert received "full benefit" from living in the condominium and that his contribution to the house in which Kendelle continued to reside during the proceedings was "implicit if not expressly paid in lieu of temporary maintenance" to Kendelle. The trial court nevertheless also rejected Robert's claim that Kendelle should be solely responsible for the $60,000 of debt she incurred post-separation on grounds that Kendelle incurred the debt to support herself "when no specific maintenance was ordered or being paid" by Robert. Accordingly, the trial court ordered Robert to pay 55% of the post-separation debt (which would be $33,000), although the trial court specified the sum as $27,000.

¶ 13   Regarding Kendelle's claims that Robert dissipated marital assets, the trial court found that "the beginning of the breakdown of the marriage began in December 2008." However, the trial court found, between December 9, 2008 and May 13, 2009 (the date on which Robert filed his dissolution petition), Robert inexplicably withdrew a total of $31,000 from the parties' joint checking account. The trial court also found inexplicable Robert's receipt of $36,979.59 from

various transactions. Accordingly, the trial court held that Robert dissipated $67,979.59 in marital assets and ordered Robert to pay Kendelle "her share of that asset [55%] which is $37,388.77."

¶ 14 On July 30, 2014, Kendelle filed a motion to reconsider the July 1, 2014, dissolution judgment on several grounds. Almost six months later, on January 9, 2015, the trial court entered an order, *inter alia*, clarifying and modifying its findings with respect to Robert's dissipation. Specifically, the trial court subtracted $10,000 from the sum of $36,979.59 in receipt from various transactions. However, it found that the $26,837.50 in imputed annual income from Robert's use of RCA credit cards for personal expenses should be added to the total amount of dissipation. The trial court found that the use of the RCA credit cards "went on for a period of approximately five and one half years, from December 1, 2008, which was the date the marriage first began to fall apart through July 1, 2014, which is the date the Judgment of Dissolution was entered, for a total of $147,606.25 of dissipation." Accordingly, the trial court held that Robert dissipated $205,585.84 in marital assets (*i.e.*, the $67,979.59 dissipation sum set forth in the dissolution judgment, minus $10,000, plus $147,606.25). The trial court concluded: "55% of that [the sum total of Robert's dissipation] would be what [Robert] would have to pay [Kendelle]," or "$127,910.98." This was evidently a mathematical error, as 55% of $205,585.84 is $113,072.21, as in a separate section of the January 9, 2015, order, the trial court ordered Robert to pay Kendelle $113,072.21 for her share of the value of the marital assets he dissipated.

¶ 15                                    B. First Appeal

¶ 16 Robert appealed; Kendelle cross-appealed. Relevant here are the grounds set forth in Robert's appeal and our resolution of his arguments. Robert challenged the trial court's rulings regarding income, maintenance, property and debt distribution, and dissipation. *Heist I*, 2016 IL App (2d) 150095-U, ¶ 4. As noted, we affirmed the trial court's judgment in part, reversed the trial

court's judgment in part, and remanded the cause for further proceedings consistent with our disposition. *Id.* ¶ 109.

¶ 17    In addressing Robert's arguments, we held that certain of the trial court's findings with respect to the calculation of Robert's income were against the manifest weight of the evidence. *Id.* ¶¶ 38-39. Specifically, we noted that the trial court included the parties' 2005 tax return in calculating Robert's average annual income, but the tax return was joint and therefore potentially included Kendelle's income. *Id.* ¶ 38. Moreover, we observed that straight averaging Robert's adjusted gross income from RCA as reflected in the 2005 to 2008 tax returns yielded a sum of $214,761, not $223,537.75, as the trial court had found. *Id.* ¶ 39. Accordingly, we remanded the matter to the trial court to clarify its calculations and remedy any arithmetical errors. *Id.* ¶¶ 39, 48.

¶ 18    Significantly, we summarized Robert's challenges to the maintenance award and our resolution of the issue in a subsection labeled our "Ruling," where we stated:

> "The trial court found Kendelle to be in need of permanent maintenance and that maintaining the lifestyle of the marriage would require approximately $100,000 in annual income, comprised of $26,000 in salary from KCI and $72,000 in maintenance, which was about 20% of Robert's gross income. Robert argues that (1) the factual findings regarding the parties' income [were] against the manifest weight of the evidence, (2) Kendelle did not forego any employment opportunities to raise children during the marriage, (3) Kendelle can support herself through her business, (4) Kendelle received a disproportionate share of the marital estate, and (5) Robert supported Kendelle during the long dissolution proceedings. *Because we have determined that a remand is necessary for the trial court to revisit Robert's RCA-related salary and to recalculate maintenance, we need not review the overall award.*" (Emphasis added.) *Id.* ¶¶ 52-53.

¶ 19    With respect to Robert's challenge to the trial court's property and debt distribution, we determined that there was an insufficient basis for the trial court's $60,000 valuation of Kendelle's post-separation debt, as Kendelle testified that she incurred only $56,180 in debt. *Id.* ¶ 79. Accordingly, we held that the trial court's valuation of Kendelle's post-separation debt was against the manifest weight of the evidence. *Id.* We noted the possibility that the trial court misallocated the debt. *Id.* Namely, we pointed out, "[i]n its other rulings, the trial court awarded Kendelle 55% of the marital estate, but by ordering Robert to pay $27,000, the court made her responsible for 55% of the debt, not 45%." *Id.*

¶ 20    We also determined that, in light of our remand for a recalculation of Kendelle's post-separation debt, we did not need to address Robert's assertion that he was entitled to a credit for the payment of expenditures necessary to maintain both marital residences during the 63-month dissolution proceeding. *Id.* ¶ 80. We stated that the "trial court, in its discretion, may revisit Robert's proposed credit, should it choose to do so." *Id.*

¶ 21    We rejected Robert's argument that the effective date of the dissolution judgment should have been modified to an earlier date for the purpose of financial recalculations in light of the trial court's delay in resolving the dissolution proceedings. *Id.* ¶¶ 81-86. We reasoned that Robert neither established that he objected to the delay nor provided authority to support his request. *Id.* ¶¶ 82-85. Nevertheless, we noted that the "trial court's delay in resolving this relatively straightforward marriage dissolution was inexcusable, especially considering the time-sensitive nature of the evidence." *Id.* ¶ 82. As the issues Robert raised turned on the valuation of assets, we determined that a remand was necessary to correct errors in the trial court's valuations—some of which were "rooted in the trial court's use of untimely evidence resulting from the delay in addressing this action." *Id.* ¶ 86.

¶ 22    With respect to Robert's challenge to the trial court's rulings regarding dissipation, we held that the trial court's finding that Robert dissipated $147,606.25 of marital assets through his use of RCA credit cards for personal expense was not against the manifest weight of the evidence. *Id.* ¶¶ 63-66. That being said, we noted that the trial court's finding of $26,837.50 in annual dissipation from December 1, 2008 (the date of the marriage's irretrievable breakdown) through July 1, 2014 (the date of the dissolution judgment)—totaling $147,606.25—was based upon Kendelle's exhibits 43A through 43E. *Id.* ¶ 64. The exhibits, however, were not part of the record, although the parties represented that the exhibits consisted of RCA credit card statements from 2006 to 2010. *Id.* Even so, this meant that the trial court determined dissipation through July 1, 2014, despite evidence of credit card statements only through 2010. *Id.* ¶ 65. We concluded, "To the extent that the trial court relied on evidence of past dissipation to speculate on Robert's dissipation after 2010, the decision is against the manifest weight of the evidence and a remand is necessary to revisit the issue." *Id.*

¶ 23    On December 6, 2016, this court issued its mandate in *Heist I*. The mandate provided: "On the 22nd day of August 2016, a Decision of the aforementioned Court was entered and in accordance with the views expressed in the attached Decision the judgment of the trial court is Affirmed in part, Reversed in part and Remanded."

¶ 24                    C. Remand Proceedings

¶ 25    The parties returned to the trial court and filed motions to adjudicate the remanded issues. Judge Ukena entered an order providing that "[a]ll remanded issues will be adjudicated by Judge [Elizabeth M.] Rochford ***." The parties filed motions to adjudicate the remanded issues in which they disputed the scope of the remand. In relevant part, Robert argued that the remand order was general and required review of both the amount and duration of the maintenance award.

Kendelle disagreed, arguing that the remand order was specific and allowed only for a determination of Robert's RCA income from 2005 to 2008 and a recalculation of the amount of maintenance based upon that determination.

¶ 26    Kendelle also sought to reopen discovery and proofs on the issue of Robert's dissipation of marital funds through his use of RCA credit cards for personal expenses. She served a deposition notice on Robert and requested production of 42 months of RCA credit card statements. Robert moved to strike the deposition notice; Kendelle moved to compel production of the documents.

¶ 27    On March 21, 2018, following the parties' argument, Judge Rochford denied Kendelle's request to reopen discovery and proofs as to dissipation and found that Kendelle failed to establish the requisite "extraordinary circumstances" to warrant an evidentiary hearing on remand. Judge Rochford also ruled with respect to the scope of remand on maintenance as follows:

"The Appellate Court did specifically remand maintenance for recalculation, but this Court cannot ignore [that] the Appellate Court did not address the other challenges to [the] maintenance award raised by Robert. This Court cannot interpret that as an oversight or an implied affirmation because the Court specifically states because remand is necessary we need not review the overall award.

This Court must interpret that as a general remand *** on the maintenance issue with the specific directive as to the recalculation of the maintenance so therefore the scope of the remand in regard to maintenance as—as to the entirety of the maintenance award."

¶ 28    Judge Rochford further reasoned that paragraph 53 of *Heist I* acknowledged Robert's additional arguments regarding maintenance but made "a very specific intentional determination not to address them because by finding that a recalculation is necessary, the remand was based on that and they did not address those additional issues." Kendelle's counsel asserted that because

*Heist I* did not address the duration of the maintenance award, the trial court could not address it on remand. Judge Rochford responded: "But you're suggesting that [the *Heist I*] determination not to address those issues affirms those issues, is an affirmance of those issues. I can't necessarily accept that." Judge Rochford requested that the parties file bench memoranda setting forth their respective arguments regarding the maintenance award.

¶ 29    In his bench memorandum, Robert argued that Kendelle's maintenance award should be limited to what she requested at trial—five years of reviewable, rehabilitative maintenance in the monthly amount of $6000. He argued that this award was appropriate given the "short-to-medium term marriage," Kendelle's age and good health, Kendelle's ability to support herself through her business, the lack of any sacrifices made by Kendelle during the marriage to the detriment of her career or to the advancement of Robert's career, the fact that no children were born to them during the marriage, and the disproportionate award of 55% of the marital estate to Kendelle. In her response to Robert's bench memorandum and in her bench memorandum, Kendelle argued that the duration of the maintenance award was not subject to adjudication on remand. Rather, Kendelle asserted, the trial court was merely tasked with mathematical determinations to recalculate maintenance. In her bench memorandum, Kendelle also argued that the trial evidence established her inability to become self-sufficient and that an award of permanent maintenance was therefore appropriate.

¶ 30    Judge Rochford scheduled the case for final ruling on the issue of maintenance but was in the interim reassigned, and Judge D. Christopher Lombardo was assigned to the case. On September 26, 2018, following the parties' arguments, Judge Lombardo found that our mandate in *Heist I* was specific and did not include review of the entirety of the maintenance award. In doing so, he reasoned, "I do not necessarily consider Judge Rochford's opinion to be the law of

the case. My view is the law of the case were the findings made by the trial judge as to the factual findings made. I find Judge Rochford's ruling to be hers, to be her interpretation of the Rule 23 [O]rder." According to Judge Lombardo, "In reading the opinion it was clear that it was remanded because much of the math was not supported from the record." He noted that "confusion" arose from paragraph 53 of *Heist I* and found that "the remand unnecessarily creates confusion as to *** [the] interpretation of what it's being remanded for." Judge Lombardo concluded, "My jurisdiction is in fact limited to addressing each of the specific issues on remand and nothing further ***. I am going to find that the scope of remand is limited to the specific mandate; and the Court will address each specific mandate individually whether by stipulation or review of the court documents and the evidence introduced at trial." Thus, Judge Lombardo entered a written order, stating that *Heist I* "contains only specific mandates" and the "court declines to review the entirety of the maintenance award."

¶ 31    Subsequently, Judge Lombardo ordered the parties to submit bench memoranda regarding the remaining issues for adjudication on remand. In his bench memorandum, Robert argued that the corrections to his average annual income yielded a sum of $212,256 ($11,281.75 less than the amount set forth in the dissolution judgment—resulting in a reduction of approximately 5%). Thus, Robert argued, the amount of the monthly maintenance award should be reduced by 5%, or $300, to $5700. To that point, Robert stated he had paid $6000 in monthly maintenance for 54 months. Thus, he requested a credit of $16,200 (representing an overpayment of $300 for 54 months). In addition, Robert requested a credit of $189,000—which was 50% of the $378,000 in expenses he paid during the dissolution proceedings to maintain the marital residence in which Kendelle resided. Regarding Kendelle's post-separation debt, Robert argued not only that the trial court

miscalculated the debt but also that there was no evidentiary basis at trial for the validity of the debt.

¶ 32    In her bench memorandum, Kendelle argued that any error in the calculation of Robert's income was *de minimis* and provided no basis upon which to modify the amount of the maintenance award. Kendelle also disputed Robert's characterization of the expenses paid to maintain the marital residence as maintenance. She further argued that Robert's share of her post-separation debt was $30,899 after correction of the errors noted in *Heist I*.

¶ 33    Following a January 22, 2019, hearing on the remand issues, Judge Lombardo stated that it would enter a stipulated order on the agreed issues and a separate order on the contested issues. Following several status hearings and briefing on the scope of the stipulated order, on April 11, 2019, the trial court entered a stipulated order and an order on the contested issues. The stipulated order set forth the parties' stipulation as to the value of certain marital property and resolution of Kendelle's dissipation claims. In the order on the contested issues, the trial court left extant the indefinite monthly maintenance award of $6000. In doing so, the trial court recalculated Robert's average RCA income reflected in the 2005 to 2008 tax returns by subtracting $10,000 of Kendelle's income from the 2005 tax return. Robert's recalculated average annual RCA income was $212,256. Thus, the trial court found, "the correct average annual income for Robert from all sources considered for determining maintenance should be $339,094[,] not $377,213[,] as the original trial court calculated." Nevertheless, the trial court reasoned, the record reflected that the original trial court intended to set maintenance consistent with $100,000 in annual income for Kendelle and "not a strict percentage application." Accordingly, the monthly maintenance award of $6000 "appears unaffected by the miscalculation of the 2005 tax return and mistaken inclusion of $10,000 of income to Robert."

¶ 34    The trial court declined to award Robert a credit for expenses he incurred in maintaining the marital home in which Kendelle resided. The trial court noted that prior to entry of the dissolution judgment, Kendelle petitioned for temporary maintenance. While her petition was pending, the parties "entered into an agreement requiring Robert to pay the mortgage, property tax and insurance for the marital residence which he vacated." These payments "were tantamount to a temporary maintenance award of approximately $6,000.00 per month." Accordingly, the trial court reasoned, the "marital funds utilized to maintain two separate marital residences independently enjoyed by the parties was necessary and equitable under the circumstances and presumably the contributions were contemplated in making the final distributions at judgment." The trial court found "the basis for denying the request for a credit to be reasonable and interrelated to the reconciliation of the marital estate between the parties and therefore declines to revisit or modify the [original] trial court order."

¶ 35    With respect to Kendelle's post-separation debt, the trial court stated that the total debt appeared to have been rounded to $60,000 despite the evidence of no more than $56,180 in debt. Accordingly, the trial court stated, "[t]his ruling shall correct the debt amount to that supported by the evidence considered, the testimony of Kendelle[,] and therefore the debt amount is reduced to $56,180." The trial court acknowledged the suggestion in *Heist I* that the allocation of only 45%, rather than 55%, of the debt to Robert was a scrivener's error given its inconsistency with the percentage allocation for the remainder of the marital estate. However, the trial court found that it would be speculative to find error in the allocation of only 45% of the debt to Robert. Indeed, the "record clearly illustrates that Robert was already supporting Kendelle by paying her mortgage, taxes and insurance." Thus, "[i]t is reasonable that the court considered this contribution when determining Kendelle should be responsible for 55% of the debts she claimed given Robert's

financial contributions during this same period of time." Accordingly, "[a]bsent any evidence supporting a different conclusion," the trial court agreed with the allocation of debt as "equitable and consistent with the distribution of assets and liabilities as a whole."

¶ 36 Robert timely filed a notice of appeal from the April 11, 2019, orders and the September 26, 2018, order regarding the scope of the remand. Kendelle timely filed a notice of cross-appeal from the March 21, 2018, order regarding the scope of the remand as it related to discovery on dissipation.

¶ 37 Litigation continued in the trial court relating to the sale of the parties' Lake Forest house in which Kendelle continued to reside. Earlier in the litigation, Robert had filed motions and ultimately a petition for rule to show cause to order Kendelle to comply with the provision in the dissolution judgment requiring the sale of the house. Back on October 31, 2017, the trial court entered an order requiring Kendelle to provide Robert, by November 13, 2017, an accounting of expenditures for repairs to the residence undertaken or recommended by the listing agent to place the house in a suitable condition for sale.

¶ 38 However, the home was not listed for sale until April 2018. And Kendelle did not provide an accounting of expenditures until May 20, 2019 (after the home was under contract for sale), at which time she filed a motion for reimbursement of 55% of sale-related costs. In support of the motion for reimbursement, she attached as an accounting copies of invoices and receipts in the total amount of approximately $40,000 that she paid in alleged repairs to effectuate the sale of the home. Robert filed a motion to dismiss Kendelle's motion pursuant to section 5/2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) West 2018)) or, alternatively, a response to the motion for reimbursement. Robert argued that Kendelle's motion was 552 days late since she had been ordered to provide the accounting by November 13, 2017. Thus, Robert argued, Kendelle's

motion should be dismissed because it was barred by the doctrines of equitable estoppel and laches. Alternatively, Robert argued that Kendelle's motion should be denied because the accounting included receipts for non-reimbursable luxury and discretionary expenditures and for expenditures that dated back to early 2016—long before the house was listed for sale in April 2018.

¶ 39    The parties also litigated the allocation of the 2019 real estate tax proration paid to the buyers at the June 10, 2019, closing of the Lake Forest house. The amount of the real estate tax proration was $4318. On May 29, 2019, Robert filed a motion, requesting a finding that the entire amount of the tax proration should be an expense allocated to Kendelle. He relied upon an order that had been entered early in the litigation, on August 6, 2014, providing that Kendelle "shall be responsible for paying from maintenance paid the mortgage, property tax and property insurance" of the Lake Forest house "until the residence is sold." He also relied upon the provision in the dissolution judgment, providing that before distribution of proceeds from the sale of the house, the "real estate taxes *** shall be paid from the sale proceeds." Robert's motion therefore sought to enforce the August 6, 2014, order and the dissolution judgment. He also argued that it would be inequitable to require him to pay a 55% portion of the tax proration, as the taxes accrued while Kendelle resided in the house and while he was paying maintenance.

¶ 40    The trial court ordered the parties to place $20,000 of the sale proceeds from the Lake Forest house in escrow pending resolution of the claims. Following an August 13, 2019, hearing on the parties' motions, the trial court denied Robert's motion to dismiss Kendelle's motion for reimbursement of sale-related costs. The trial court noted that although Kendelle had an obligation to submit her accounting for the repairs within 14 days, "there could have been some due diligence on behalf of [Robert] to see if there was such expenditures and why weren't they being provided *** there was a lack of diligence on both parties." Turning to the merits of the motion, the trial

court determined that Kendelle was only entitled to reimbursement for Robert's portion of repairs necessary to list the home for sale—a new roof, structural repair to the basement, a new electrical panel, sewer work and underground storage tank removal, and painting—and ordered Robert to pay Kendelle 55% of those repair costs.

¶ 41  As for Robert's motion to enforce the August 6, 2014, order and dissolution judgment, the trial court initially agreed that "the taxes that [Kendelle] was responsible for carried all the way through the date of the closing" and the prorated taxes of $4138 through June 10, 2019 "would be her responsibility." Kendelle's counsel argued, however, that if Kendelle paid the tax proration, the amount of the total proceeds would increase by $4138—of which Robert would have received 45% and Kendelle would have received 55%. The trial court agreed and found that while Kendelle was responsible for the 2019 real estate tax proration paid to the buyers, "[T]hat should be recalculated with the net proceeds to the percentage that the parties should receive. So you can do your math: 45% of 4138." The trial court's August 13, 2019, written order following the hearing stated that Kendelle was liable for the $4138 tax proration and owed Robert 45% of that amount. Accordingly, on August 21, 2019, Judge Lombardo entered an order distributing $1,908.80 in the escrowed sale proceeds to Robert and $18,091.20 to Kendelle.

¶ 42  Robert timely filed a notice of appeal from the trial court's orders regarding allocation of sale-related costs and distribution of the escrowed funds. We granted Robert's motion to consolidate his appeal with the pending appeal and cross-appeal from the trial court's orders determining the scope of remand and adjudicating the issues on remand.

¶ 43                                II. ANALYSIS

¶ 44  The issues in Robert's consolidated appeal involve the scope of our remand in *Heist I* on the question of maintenance, the award of indefinite maintenance to Kendelle, the allocation of

Kendelle's post-separation debt, and the allocation of expenses relating to the sale of the marital home. The issue in Kendelle's cross-appeal involves the scope of our remand in *Heist I* on the question of Robert's dissipation of marital assets. We address these issues in turn.

¶ 45                                    A. Robert's Appeal

¶ 46     Robert's central challenge is to the maintenance award. He argues that the trial court improperly limited the scope of our remand on the maintenance issue and that the trial court abused its discretion in awarding Kendelle indefinite maintenance. Robert also contends that the trial court erred in allocating Kendelle's post-separation debt and the proceeds from the sale of the marital residence. We address each argument in turn.

¶ 47                          1. Scope of Remand on Maintenance Award

¶ 48     A reviewing court's reversal of a judgment is final as to all questions decided, and if the cause is remanded, the trial court may act only in conformity with the reviewing court's judgment. *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 305 (1981). The trial court has no authority to act beyond the mandate's directives. *Id.* at 308-09. A reviewing court's mandate "is the transmittal of the judgment of that court to the circuit court, and revests the circuit court with jurisdiction." *Id.* at 304. A mandate may be specific or general in its directions as to the action to be taken on remand. *In re Marriage of Jones*, 187 Ill. App. 3d 206, 215 (1989). "A specific mandate must be followed precisely." *Id.* For instance, if the mandate specifies to enter a permanent injunction, the trial court must enter a permanent injunction. *Id.* In contrast, the mandate may set forth general language that instructs the trial court to "proceed in conformity with the opinion." *PSL Realty*, 86 Ill. 2d at 308. "[T]hen, of course, the content of the opinion is significant." *Id.* To that end, "[t]he entire opinion is relevant" in determining the appropriate course of action. *People v. Gonzalez*, 407 Ill. App. 3d 1026, 1037 (2011).

¶ 49    Initially, we note that both parties improperly characterize the standard of review of the remand court's interpretation of our mandate as an abuse of discretion. Whether the trial court complied with our mandate on remand is a question of law subject to *de novo* review. See *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351-52 (2002) ("After a remand, the trial court is required to exercise its discretion within the bounds of the remand. Whether it has done so is a question of law."); *Quincy School District No. 172 v. Illinois Educational Labor Relations Board*, 366 Ill. App. 3d 1205, 1208 (2006) ("[W]hether the [agency] complied with our mandate is subject to *de novo* review.").

¶ 50    Robert argues that the trial court improperly interpreted the scope of our remand with respect to consideration of the maintenance award. According to Robert, the remand was general and allowed review of the entirety of the maintenance award, including its duration. Kendelle counters that the trial court correctly determined that the remand was specific and allowed only for a recalculation of Robert's RCA income from 2005 to 2008 and for a determination of whether the recalculation impacted the amount of the maintenance award.

¶ 51    We hold that Judge Lombardo improperly interpreted the scope of our remand. The mandate was undoubtedly general and allowed for review of the entirety of the maintenance award. It provided that the trial court's judgment was affirmed in part, reversed in part, and remanded "in accordance with the views expressed in the attached Decision."

¶ 52    Accordingly, the trial court was obliged to consult our disposition in *Heist I*—the entire disposition—in determining the appropriate action to be taken on remand. The trial court stated that it considered the disposition in *Heist I*; however, the record demonstrates that the trial court confined its analysis to those portions where we determined mathematical errors in the calculation of Robert's average income. See *Heist I*, 2016 IL App (2d) 150095-U, ¶¶ 38-39, 48. Namely, the

trial court reasoned, "[i]n reading the opinion it was clear that it was remanded because much of the math was not supported from the record." Thus, the trial court merely corrected the calculation error with respect to Robert's income but found that the miscalculation did not affect the monthly maintenance figure of $6000. It otherwise declined to address the propriety or duration of the overall maintenance award.

¶ 53    The trial court's narrow interpretation of our remand failed to consider the entirety of our disposition in *Heist I*. Robert raised additional challenges to the maintenance award in *Heist I*. We delineated those challenges in our disposition, including Robert's challenge to indefinite maintenance on grounds that Kendelle did not forego employment opportunities to raise children during the marriage, her business provided her the ability to support herself, she received a disproportionate share of the marital estate, and Robert supported her during the dissolution proceedings. *Id.* ¶ 53. We concluded, however, that "[b]ecause we have determined that a remand is necessary for the trial court to revisit Robert's RCA-related salary and for recalculation of maintenance, we need not review the overall award." *Id.* In addressing this portion of our disposition, the trial court merely noted that it created "confusion" as to the scope of the remand. Our ruling, however, was explicit—in the light of the remand, we declined to address Robert's remaining challenges to the amount and duration of the maintenance award, leaving this to the court on remand. *Id.* The trial court's holding that our remand was limited to a review of mathematical errors was erroneous.

¶ 54    The trial court's holding on remand improperly left Robert's challenges to the overall maintenance award unaddressed and unresolved. See *People v. Abraham*, 324 Ill. App. 3d 26, 30 (2001) (issues not actually decided by the reviewing court may be considered following remand); *Filipetto v. Village of Wilmette*, 254 Ill. App. 3d 461, 466 (1993) (issues presented but not decided

on appeal may be litigated on remand). We address those challenges now and review the overall maintenance award.

¶ 55                    2. Amount and Duration of Maintenance Award

¶ 56    The award of maintenance in this dissolution proceeding is governed by section 504 of the Act (750 ILCS 5/504 (West 2014)). The trial court "may grant a maintenance award for either spouse in amounts and for periods of time as the court deems just ***." 750 ILCS 5/504(a) (West 2014). Section 504(a) of the Act sets forth a list of factors for the trial court to consider in determining maintenance. 750 ILCS 5/504(a)(1)-(12) (West 2014). The factors include: (1) the income and property of each party; (2) the parties' needs; (3) the parties' present and future earning capacity; (4) any impairment of the parties' present and future earning capacity, resulting from domestic duties or delayed education or employment opportunities due to the marriage; (5) the time necessary for the party seeking maintenance to acquire the appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment, or whether, as the custodial parent, it is not appropriate for the party to seek employment; (6) the standard of living established during the marriage; (7) the duration of the marriage; (8) the age and the physical and emotional condition of both parties; (9) the tax consequences of the property division; (10) the contributions and services by the party seeking maintenance to the education or career of the other spouse; (11) any valid agreement of the parties; and (12) "any other factor that the court expressly finds just and equitable." *Id.*; *In re Marriage of Micheli*, 2014 IL App (2d) 121245, ¶ 19.

¶ 57    A maintenance award is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 26. A trial court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable or where

no reasonable person would agree with its determination. *Seymour v. Collins*, 2015 IL 118432, ¶ 41. The trial court's factual findings regarding maintenance will be set aside only if the findings are against the manifest weight of the evidence. *Brill*, 2017 IL App (2d) 160604, ¶ 30. A finding of fact is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 58     Robert challenges the amount and duration of the maintenance award. Preliminarily, however, we must consider Kendelle's contention that Robert forfeited his challenge to the duration of the maintenance award by stipulating to its resolution on remand. In support, Kendelle cites the trial court's April 11, 2019, order on contested issues, which provided: "The parties have entered into stipulations resolving several issues and have presented briefs and oral argument as to the agreed upon contested issues on remand. The parties agree this Court shall determine the amount of maintenance payable by Robert to Kendelle ***." The order further provided, "The remaining issues have been resolved by agreement of the parties and are attached and incorporated within this order." According to Kendelle, the order precludes our consideration of the duration of the maintenance award. We disagree.

¶ 59     The record belies Kendelle's characterization of Robert's position on remand; Robert maintained his position that the *Heist* I remand permitted the trial court to review the overall maintenance award throughout the protracted litigation on remand. Notwithstanding Judge Lombardo's disagreement with Judge Rochford that the scope of the remand was specific, Robert explicitly included in a proposed order attached to his bench memorandum his "standing objection" to Judge Lombardo's interpretation of the remand.

¶ 60     Thereafter, at a February 22, 2019, status hearing, Judge Lombardo stated that "[w]e've been sort of kicking this down the road for no reason," and unless a stipulation was reached, he

would rule on "everything because it needs to get done." Ultimately, Judge Lombardo entered the April 11, 2019, order, resolving the maintenance claim. Relying as Kendelle urges upon an isolated portion of the order, without regard to its full content or context, to hold that Robert forfeited his challenge to the duration of the maintenance award would ignore Robert's continued opposition on remand to Judge Lombardo's interpretation of the scope of remand. While the stipulated order indeed provides that entry of the order resolves by stipulation "all uncontested outstanding issues" arising from the adjudication on remand, the record demonstrates that the duration of the maintenance award and the scope of the remand were always contested. Thus, we turn to Robert's challenge to the maintenance award.

¶ 61    Robert argues that the trial court abused its discretion in awarding Kendelle indefinite maintenance where it *sua sponte* exceeded her request for five years of rehabilitative, reviewable maintenance, and where the award otherwise lacked an evidentiary basis in the record. Kendelle counters that the evidence established significant disparity in the parties' education, income and earning potential and that the indefinite maintenance award was necessary to allow continued enjoyment of the standard of living established during the 19-year marriage. Our review of the record as set forth below compels us to conclude that the trial court's award of indefinite maintenance was an abuse of discretion.

¶ 62    The trial court awarded Kendelle indefinite maintenance in the amount of $6000 per month. But Kendelle did not request indefinite maintenance. Rather, in her written closing argument and proposed dissolution judgment, Kendelle explicitly requested an award of reviewable, rehabilitative maintenance in the amount of $6250 per month for a period of 60 months. She argued that "she will be required to not only rehabilitate herself, but educate herself," and that "it will be incumbent upon her to contribute to her support to the greatest degree possible." She stated that

the requested maintenance award "would be reviewable upon the filing of a proper petition by Kendelle at the conclusion of the 60[-]month period and would be subject to termination pursuant to the statutory factors set forth under 750 ILCS 5/510."

¶ 63    A party generally cannot be granted relief in the absence of a corresponding pleading. *In re Marriage of Cantrell*, 314 Ill. App. 3d 623, 628 (2000). For instance, in *Cantrell*, the dissolution judgment included an award of rehabilitative maintenance to the wife, reviewable after four years. *Id.* at 625. At the scheduled maintenance-review hearing, the trial court extended the reviewable maintenance award for two years. *Id.* at 626. Two years later, the husband filed a petition to terminate or review maintenance. *Id.* However, following a hearing, the trial court entered an order awarding the wife "permanent" (or indefinite) maintenance. *Id.* at 627.

¶ 64    On appeal, we held that the trial court abused its discretion in awarding permanent maintenance and vacated this portion of the trial court's order. *Id.* at 628. We reasoned that the wife never requested permanent maintenance and that "the record lack[ed] circumstances in which the trial court *sua sponte* should have created an award for permanent maintenance ***." *Id.* In this regard, we also held that the trial court abused its discretion in denying the husband's request to terminate maintenance and reversed the trial court's maintenance award. *Id.* at 629-30. The evidence at the maintenance-review hearing established that the wife obtained a college degree after the divorce at the husband's expense, was employable, and had no impairments but had done "little toward finding gainful employment or advancing her efforts at becoming self-sufficient." *Id.* at 630. Thus, we reasoned, the "trial court's judgment serves as a disincentive to [the wife] to achieve financial independence, prolongs [the wife's] dependence and [the husband's] litigation expenses, and discourages judicial economy." *Id.* We therefore remanded the case to the trial court with directions to enter an order terminating maintenance. *Id.*

¶ 65    "Maintenance is designed to be rehabilitative and to allow a dependent spouse to become financially independent." *In re Marriage of Smith*, 2012 IL App (2d) 110522, ¶ 44. Rehabilitative maintenance is an "incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency." *In re Marriage of Selinger*, 351 Ill. App. 3d 611, 615 (2004). However, an award of indefinite maintenance may be appropriate, for instance, where the recipient spouse "is unemployable or employable only at an income substantially lower than the previous standard of living" (see *Micheli*, 2014 IL App (2d) 121245, ¶ 28); where the recipient spouse "devoted significant time to raising a family in lieu of pursuing a career" (see *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 652 (2008)); or where the recipient spouse "is disabled to the point where he or she is unable to work" (see *In re Marriage of Brackett*, 309 Ill. App. 3d 329, 340 (1999)).

¶ 66    Considering the above, the record demonstrates that the trial court's *sua sponte* award of indefinite maintenance, as in *Cantrell*, was an abuse of discretion. The evidence at trial established that Kendelle was employed throughout the marriage. She was the sole owner of KCI—an interior design and decorating firm. Kendelle was 47 years old at the time of trial and testified that she had a "gift" in the field of interior decorating, was in "fairly good" health and had attended "roughly three" years of college. The trial court made no findings of any impairments to Kendelle's ability to work. The parties had no children, and the trial court made no findings that Kendelle sacrificed any aspect of her career as a result of the marriage. Moreover, Kendelle received a disproportionate 55% share of the marital estate, which included cash, retirement and investment assets, a car, proceeds from the sale of the marital residence, and personal property.

¶ 67    In further support of indefinite maintenance, Kendelle argues that the length of the parties' marriage and the discrepancy in the parties' income and earning capacity warranted an award of

indefinite maintenance. As to the length of the parties' marriage, the trial court reasoned that this was "nearly a 20-year marriage." While the parties were indeed married on June 3, 1995, and the dissolution judgment was entered on July 1, 2014, Robert filed his dissolution petition on May 13, 2009. As we noted in *Heist I*, the trial court's delay in resolving this "relatively straightforward marriage dissolution" was "inexcusable." Parenthetically, we note that if the current statutory maintenance guidelines applied here, the length of the marriage would be calculated as 13 to 14 years. See 750 ILCS 504(b-1)(1)(B) (West Supp. 2019). As to the discrepancy in the parties' income and earning capacity, to be sure, the record demonstrates that Kendelle lacked a college degree and that her average annual income from KCI was significantly lower than Robert's average annual income. But that was the point of Kendelle's stated request for a reviewable, rehabilitative maintenance award in her written closing argument—"to not only rehabilitate herself, but educate herself" and "contribute to her support to the greatest degree possible." In light of the evidence at trial, as set forth above, Kendelle's arguments are not persuasive.

¶ 68 Accordingly, the record demonstrates that the trial court's *sua sponte* award of indefinite maintenance was unreasonable. See *In re Marriage of Haas*, 215 Ill. App. 3d 959, 964 (1991) (award of reviewable maintenance not an abuse of discretion where indefinite maintenance was "not justified" because the recipient spouse "has been employed throughout the marriage and seemingly has the potential to become self-sufficient"); *Micheli*, 2014 IL App (2d) 121245, ¶ 30 (denial of indefinite maintenance not an abuse of discretion where the recipient spouse was educated, healthy, employed full-time, and awarded a substantial portion of the marital estate).

¶ 69 Further, the trial court's award of indefinite maintenance, despite Kendelle's request for five years of reviewable, rehabilitative maintenance, had practical implications for the future course of this litigation. Namely, " '[w]hen one seeks to extend an award of rehabilitative

maintenance, the burden lies on the party seeking the extension to show that he or she has met the affirmative duty of acquiring sufficient training or education to find employment.' " *In re Marriage of Brunke*, 2019 IL App (2d) 190201, ¶ 34 (quoting *In re Marriage of Courtright*, 229 Ill. App. 3d 1089, 1091 (1992)). "If the party seeking maintenance fails to make a good-faith effort to become self-sufficient, the court may terminate rehabilitative maintenance." *Id.* In contrast, when one seeks to modify or terminate an award of indefinite maintenance, the burden lies on the party seeking modification or termination to show proof of a "substantial change in circumstances." *Id.* ¶¶ 51-53 (citing 750 ILCS 5/510(a-5) (West 2018)). Accordingly, had the trial court awarded Kendelle the five-year reviewable, rehabilitative maintenance she requested, Kendelle would have had the burden at the maintenance-review hearing to establish good-faith efforts at self-sufficiency in order to extend the duration of maintenance. As it stands, however, Robert has the burden to establish a substantial change in circumstances if he were to seek modification or termination of the award of indefinite maintenance.

¶ 70    Having concluded that the record demonstrates that the trial court abused its discretion in awarding Kendelle indefinite maintenance, upon remand, Kendelle will have the burden of establishing good-faith efforts to become self-sufficient.

¶ 71    Robert also argues that the trial court abused its discretion in setting the amount of the maintenance award. He contends that the recalculation of his income on remand warranted a reduction in the amount of maintenance. The trial court found that the maintenance award was intended to be consistent with a figure of $100,000 in annual income for Kendelle and "not a strict percentage application." Robert presents no persuasive basis upon which to conclude that this finding was against the manifest weight of the evidence. Accordingly, we reject Robert's argument that the trial court abused its discretion in setting the amount of the maintenance award. Our

holding is limited to a determination that the trial court abused its discretion in setting the duration of the maintenance award.

¶ 72    We next turn to the appropriate relief here. As our supreme court has aptly observed, "there must be an end to litigation." *PSL Realty*, 86 Ill. 2d at 313. Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) allows a reviewing court to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the enforcement of a judgment, that the case may require." In light of Kendelle's explicit request at the close of trial for an award of five years of reviewable, rehabilitative maintenance and the circumstances set forth above, we vacate that portion of the maintenance award that provided indefinite maintenance, modify the dissolution judgment to reflect an award of five years of reviewable, rehabilitative maintenance, and remand the matter for a maintenance-review hearing if Kendelle so requests. See *Brill*, 2017 IL App (2d) 160604, ¶¶ 48, 64 (reducing amount of maintenance award in accordance with statutory cap pursuant to Rule 366(a)(5)); *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 88 (striking erroneous termination event from maintenance award pursuant to Rule 366(a)(5) where "[n]o new hearing on maintenance is warranted and would be a waste of judicial resources"); *In re Marriage of Head*, 273 Ill. App. 3d 404, 411 (1995) (reducing valuation of the husband's medical practice to "only properly proven value" pursuant to Rule 366(a)(5) and reducing the husband's share of the marital estate accordingly).

¶ 73    As set forth herein, we also hold that the trial court's findings with respect to its denial of any credit toward Robert's maintenance obligation were not against the manifest weight of the evidence. Thus, the cause is remanded only for a maintenance-review hearing. The sole issue on remand is whether and under what terms the reviewable maintenance award should be extended if

Kendelle so requests. As set forth herein, all other issues that have been raised by the parties in this litigation are resolved.

¶ 74                                3. Allocation of Post-Separation Debt

¶ 75    The trial court "shall divide the marital property [including debt] *** in just proportions considering all relevant factors." 750 ILCS 5/503(d) (West 2014). While the trial court's ultimate distribution of marital property is reviewed under the abuse-of-discretion standard of review (see *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 34), the trial court's determination as to the value of marital property is reviewed under the manifest-weight-of-the-evidence standard of review (see *In re Marriage of Vancura*, 356 Ill. App. 3d 200, 203 (2005)).

¶ 76    On remand, the trial court determined that the total amount of Kendelle's post-separation debt appeared to have been improperly rounded to $60,000 in the dissolution judgment. The trial court reduced the total debt amount to $56,180, finding that the sum was supported by the evidence considered—Kendelle's testimony. The trial court declined to reallocate the percentage allocation. Rather, the trial court determined that it was reasonable that the original trial court considered "that Robert was already supporting Kendelle by paying her mortgage, taxes and insurance" in determining that Kendelle should be responsible for 55% of the post-separation debt. The trial court noted the absence of any evidence to support a different conclusion and agreed with the allocation of debt as "equitable and consistent with the distribution of assets and liabilities as a whole." Thus, the trial court allocated 45% of the debt to Robert.

¶ 77    Robert argues that the trial court erred in allocating Kendelle's post-separation debt and in declining to award a credit for the expenses he incurred in maintaining two marital residences during the dissolution proceedings. However, he does not articulate a basis upon which to hold that the trial court's findings as to the valuation of the debt were against the manifest weight of the

evidence. Rather, Robert couches his argument as a challenge to the trial court's interpretation of the scope of the remand on this issue. According to Robert, the trial court erroneously determined that the remand was specific and did not allow for consideration of Robert's argument that the entire debt award lacked an evidentiary basis. We disagree. The trial court properly interpreted the scope of the remand on this issue. While the trial court commented at the hearing on remand that "the math is an issue" and "[w]e're not litigating the evidence of trial," the entirety of the transcript reflects that the trial court explicitly found that the total debt amount of $56,180 was supported by Kendelle's testimony at trial and noted the absence of any evidence to support a different conclusion.

¶ 78 Robert nevertheless contends that the trial court erroneously denied him a credit for 50% of the $378,000 in expenses he paid to maintain the Lake Forest house in which Kendelle resided during the dissolution proceedings. However, as the trial court on remand found, the payments "were tantamount to temporary maintenance," necessary and equitable under the circumstances, and presumably contemplated in the dissolution judgment. Moreover, the trial court found the basis to deny the credit reasonable and interrelated to the reconciliation of the parties' marital estate. Based upon our review of the record, we conclude that these findings were not against the manifest weight of the evidence.

¶ 79 In sum, the record demonstrates no basis upon which to conclude that the trial court's findings were unreasonable, arbitrary, or not based on the evidence, or that an opposite conclusion is clearly evident. We hold that the trial court's allocation of the marital property was not an abuse of discretion.

¶ 80                    4. Sale of Marital Residence

¶ 81    Robert contends that the trial court erroneously granted reimbursement to Kendelle for the costs related to the sale of the Lake Forest house and for the 2019 real estate tax proration paid to the buyers at closing. We disagree, as set forth below.

¶ 82                                    a. Sale-Related Costs

¶ 83    Robert filed a motion to dismiss Kendelle's motion for reimbursement pursuant to section 2-619(a)(9) and an alternative response, arguing that reimbursement should be denied. We review *de novo* a ruling on a motion to dismiss. *Barber v. American Airlines*, 241 Ill. 2d 450, 455 (2011). As discussed, the trial court's distribution of marital property is reviewed under the abuse-of-discretion standard of review (see *Hamilton*, 2019 IL App (5th) 170295, ¶ 34), and its determination as to the value of marital property is reviewed under the manifest-weight-of-the-evidence standard of review (see *Vancura*, 356 Ill. App. 3d at 203).

¶ 84    Robert sought dismissal of Kendelle's motion for reimbursement based upon the doctrines of equitable estoppel and laches. Equitable estoppel is "the effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001). Laches is "a neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." *Meyers v. Kissner*, 149 Ill. 2d 1, 12 (1992). As to both doctrines, the party asserting the defense must establish, *inter alia*, resulting prejudice. *Geddes*, 196 Ill. 2d at 313-14; *Meyers*, 149 Ill. 2d at 12-13.

¶ 85    Here, the trial court's October 31, 2017, order required Kendelle to provide Robert an accounting of expenditures for the stated repairs by November 13, 2017. Kendelle did not file her

motion for reimbursement of sale-related costs with the attached accounting until May 20, 2019. However, Robert failed to set forth any basis to establish resulting prejudice. The record demonstrates that the home was not under contract for sale until 2019, at which point Kendelle accounted for the repairs necessary to sell the home in her motion for reimbursement. In addition, we note the trial court's finding that "there was a lack of diligence on both parties." Accordingly, the trial court properly denied Robert's motion to dismiss Kendelle's motion for reimbursement on grounds of equitable estoppel or laches.

¶ 86    Moreover, while Robert further argues that the trial court abused its discretion in partially granting Kendelle's motion for reimbursement, the argument merely reiterates his contention that Kendelle's delay precluded full relief. Robert presents no persuasive basis to reverse the trial court's order reimbursing Kendelle for a portion of the costs related to the sale of the Lake Forest house.

¶ 87                                    b. Real Estate Tax Proration

¶ 88    Robert argues that the August 6, 2014, order required Kendelle to pay the property taxes on the Lake Forest house until it was sold. Thus, Robert argues, the issue for our review is whether the trial court misinterpreted the language of the August 6, 2014, order—an issue that should be reviewed under a *de novo* standard of review. See *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 523 (2001) (the standard of review is *de novo* where the issue involves the application of law to undisputed facts). We disagree. We are not interpreting the language of the August 6, 2014, order. Indeed, the trial court agreed with Robert that Kendelle was obliged to pay the property taxes on the Lake Forest house until it was sold and thus liable for the 2019 real estate tax proration paid to the buyers. The issue is the trial court's factual findings as to the effect of that payment on the

allocation of the proceeds from the sale of the house—an issue we consider under the manifest-weight-of-the-evidence standard of review. See *Vancura*, 356 Ill. App. 3d at 203.

¶ 89     The trial court found that Kendelle's payment of the tax proration would increase the proceeds from the sale of the Lake Forest house by $4138. Thus, pursuant to the parties' proportional share of the marital property, the trial court found that Kendelle owed Robert 45% of the amount of the tax proration. The escrowed sale proceeds were distributed accordingly. The record demonstrates no basis upon which to conclude that the trial court's findings were unreasonable, arbitrary, or not based on the evidence, or that an opposite conclusion is clearly evident.

¶ 90                                    B. Kendelle's Cross-Appeal

¶ 91     The issue raised in Kendelle's cross-appeal relates to whether the trial court improperly denied her leave to reopen discovery and the proofs on remand as to the issue of Robert's dissipation of marital assets through his use of RCA credit cards. However, Kendelle failed to provide a single record citation in support of her argument on cross-appeal in violation of Illinois Supreme Court Rule 341(h)(7). See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (an argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Failure to provide proper record citation "is a violation of Rule 341(h)(7), the consequence of which is the forfeiture of the argument." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12. The rules of procedure regarding appellate briefs are not mere suggestions, and when procedural violations interfere with our review of the issues on appeal, it is within our discretion to strike the brief and dismiss the appeal for failure to comply with the rules. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 10. The difficulty this deficiency presents is compounded by the absence of a cross-appellant reply brief,

which was declined after her untimely, procedurally improper motion for an extension of time to file it. Kendelle has forfeited her argument on cross-appeal.

¶ 92     Forfeiture aside, Kendelle's argument lacks merit. In *Heist I*, we pointed out that the trial court determined dissipation through July 1, 2014, despite evidence of credit card statements only through 2010. 2016 IL App (2d) 150095-U, ¶ 65. We concluded, "To the extent that the trial court relied on evidence of past dissipation to speculate on Robert's dissipation after 2010, the decision is against the manifest weight of the evidence and a remand is necessary to revisit the issue." *Id.* From this language, Kendelle urges that our remand required the trial court to consider the RCA credit card records from 2010 through 2014. Thus, Kendelle contends that the trial court erred in disallowing her leave to reopen discovery and proofs on the issue. Our remand in *Heist I*, however, was not intended to reopen discovery on the issue of Robert's use of RCA credit cards for personal expenses. Rather, the point was to recalculate the imputed income consistent with the evidence adduced at trial. For the foregoing reasons, we reject Kendelle's argument on cross-appeal.

¶ 93                                III. CONCLUSION

¶ 94     For the reasons stated, we affirm in part, reverse in part, and vacate in part the judgment of the circuit court of Lake County and remand for the sole purpose of a maintenance-review hearing.

¶ 95     Affirmed in part, reversed in part, vacated in part, and remanded.